UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EASTLAND MUSIC GROUP, LLC, a Florida Limited Liability Company, and RAYNARLDO WHITTY<br><br>Plaintiffs,<br><br>v.<br><br>LIONSGATE ENTERTAINMENT, INC., a Delaware Corporation, SUMMIT ENTERTAINMENT, LLC, a Delaware Limited Liability Company, and MANDATE PICTURES, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No: 11-cv-08224<br><br>Judge Lindberg |

# DEFENDANTS SUMMIT ENTERTAINMENT LLC'S, MANDATE PICTURES, LLC'S, AND LIONS GATE ENTERTAINMENT, INC.'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Dated: New York, New York
       May 14, 2012

Tom J. Ferber
Ross M. Bagley
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

Joseph P. Bonavita
GOULD & RATNER LLP
222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
(312) 236-3003

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    Defendants and The Film ................................................................................................2

    Plaintiffs and "PHIFTY-50" ...........................................................................................2

    The Term "50/50" ..........................................................................................................3

ARGUMENT .........................................................................................................................4

STANDARD OF REVIEW ...................................................................................................4

POINT I .................................................................................................................................5

    THE FILM'S TITLE IS PROTECTED BY THE FIRST
    AMENDMENT, WHICH BARS PLAINTIFFS' LANHAM ACT CLAIMS .........................5

        A.  The Rogers Test .................................................................................................5

        B.  The Title "50/50" Has Clear Artistic Relevance To The Film's Story .........................7

        C.  Plaintiffs Do Not And Cannot Allege That Defendants' Use Of
           The Title "50/50" Could Explicitly Mislead Consumers Into Thinking
           That The Film Is Related To Their Products ...............................................10

POINT II ...............................................................................................................................14

    PLAINTIFFS' STATE LAW CLAIMS ARE ALSO
    BARRED BY THE FIRST AMENDMENT ...........................................................14

POINT III ..............................................................................................................................15

    THE COURT SHOULD AWARD DEFENDANTS
    THEIR ATTORNEYS' FEES ..................................................................................15

CONCLUSION .....................................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(s)**

*Application of Cooper,*
    254 F.2d 611 (C.C.P.A. 1958) ..................................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662, (2009)..................................................................................................................4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, (2007)..................................................................................................................4

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239 (1903)...................................................................................................................8

*Brown v. Electrics Arts, Inc.*,
    2009 U.S. Dist. LEXIS 131387 (C.D. Cal. Sept. 23, 2009).................................................5, 8, 9

*Burnett v. Twentieth Century Fox*,
    491 F. Supp. 2d 962 (C.D. Cal. 2007) .......................................................................................5

*Capcom v. MKR Group, Number C 08-0904 RS*,
    No. C 08 0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ...........................................4

*Cliffs Notes Inc. v. Bantam Doubleday Publishing*,
    886 F.2d 490 (2d Cir. 1989).......................................................................................................6

*Dessert Beauty, Inc., v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008)......................................................................................12

*Dillinger, LLC v. Electric Arts, Inc.*,
    No 1 09 CV 1236 JMS DKL
    2011 WL 2457678 (S.D. Ind. June 16, 2011).....................................................................5, 9, 10

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ............................................................................................. passim

*Eastern Tool Warehouse Corp. v. Jireh Publishing, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ............................................................................................5, 6, 10

*Felix the Cat Products v. New Line Cinema*,
    2000 No CV 99-9339 RCx, 2000 WL 770481 (C.D. Cal. Apr. 28, 2000) ................................4

**CASES**   **PAGE(s)**

*Gugliemi v. Spelling-Goldberg Products*,
    25 Cal. 3d 860 (1979) ...............................................................................................10

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495, (1952)..................................................................................................1

*L.L. Bean, Inc. v. Drake Publ., Inc.*,
    811 F.2d 26 (1st Cir. 1987).........................................................................................6

*Le Book Publishing, Inc. v. Black Book Photography, Inc.*,
    418 F. Supp. 2d 305 (S.D.N.Y. 2005).......................................................................13

*Leopold v. Levin*,
    45 Ill. 2d 434 (Ill. 1970)..............................................................................................9

*Kent v. Universal Studios*,
    Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug 15, 2008) ..................................4

*Mattel. Inc. v. MCA Records. Inc.*,
    28 F. Supp. 2d 1120, (C.D. Cal. 1998) ....................................................................14

*Mattel, Inc. v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) ............................................................................ passim

*Menominee Indian Tribe of Wisconsin v. Thompson*,
    161 F.3d 449 (7th Cir. 1998) .....................................................................................4

*Page v. Something Weird Video*,
    960 F. Supp. 1438 (C.D. Cal. 1996) .........................................................................9

*Peters v. West*,
    776 F. Supp. 2d 742 (N.D. Ill. 2011) ........................................................................4

*In Re Posthuma,*
    45 U.S.P.Q. 2d 2011 (TTAB 1998) ........................................................................11

*Rin Tin Tin, Inc. v. First Look Studios, Inc.*,
    671 F. Supp. 2d 893 (S.D. Tex. 2009) ....................................................................12

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)............................................................................. passim

*Roxbury Entertainment v. Penthouse Media Group, Inc.*,
    669 F. Supp. 2d 1170 (C.D. Cal. 2009) ........................................................8, 9, 11, 14

**CASES**                                                                                                                      **PAGE(s)**

*S Industrial v. Centra 2000*,
    249 F.3d 625 (7th Cir. 2001) ....................................................................................................15

*Spex, Inc., v. Joy of Spex*,
    847 F. Supp. 567 (N.D. Ill. 1994) ..............................................................................................14

*Sugar Busters LLC v. Brennan*,
    177 F.3d 258 (5th Cir. 1999) ................................................................................................5, 11

*Sullivan v. CBS Corp.*,
    385 F.3d 772 (7th Cir. 2004) .....................................................................................................12

*Woodard v. Jackson*,
    2004 No 1 03 CV 0844 DFH , 2004 WL 771244 (S.D. Ind. Mar. 25, 2004). ........5, 7, 9, 13

*Yankee Publishing Inc., v. News America Publishing Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992)........................................................................................8, 14

**STATUTES**

Fed. R. Civ. P. 12(b)(6)................................................................................................... *passim*

815 ILCS 505 ....................................................................................................................14

815 ILCS 510/2 .................................................................................................................14

15 U.S.C. § 1114................................................................................................................6

15 U.S.C. § 1117(a) ..........................................................................................................15

15 U.S.C. § 1125(a) ...........................................................................................................6

Defendants Summit Entertainment, LLC, Mandate Pictures, LLC and Lions Gate Entertainment, Inc. (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiffs Eastland Music Group, LLC and Raynarldo Whitty (together "Plaintiffs") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Ignoring the First Amendment protections afforded to films as works of artistic expression,[1] Plaintiffs assert Lanham Act and state law claims concerning the title of the motion picture "50/50" (the "Film"). Plaintiffs, who are affiliated with a record label based in Jacksonville, Florida known as "Phifty-50," take the untenable position that they enjoy the exclusive right to use the common term "50/50" and that Defendants' use of it as the title of the Film – which tells the story of a cancer patient with a 50/50 chance of survival – infringes that right. Under the widely-accepted test articulated in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002), and other cases, the First Amendment bars Plaintiffs' claims as a matter of law because Defendants' use of the title "50/50" is relevant to the subject matter of the Film and because that title is not explicitly misleading about the origin or content of the Film. Therefore, Plaintiffs cannot state a cognizable claim based upon Defendants' use of the title "50/50" for the Film. Plaintiffs' claim is not only precluded as a matter of law, it is frivolous.

---

[1] Sixty years ago, the U.S. Supreme Court held that "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502, 777, 781 (1952).

**STATEMENT OF FACTS**

**Defendants and The Film**

Defendants produce and/or distribute films that stimulate, inform and entertain audiences.[2] In 2011, Defendants released "50/50," which follows a young man's struggle, with the help of his friend, following the discovery that he has a rare cancer in his spine and that even with chemotherapy he has only a 50/50 chance of survival. Compl. Exh. 14. The Film was inspired by real-life experiences of screenwriter Will Reiser and actor Seth Rogen.[3]

**Plaintiffs and "PHIFTY-50"**

Plaintiffs are an individual[4] and company associated with the Jacksonville Florida record label[5] "Phifty-50." Plaintiffs sell rap music about their hardscrabble lifestyle in the southern United States. Plaintiffs' website explains that they operate under the name "Phifty-50" because growing up they "had 50-50 chance to make it out [of the] hood." *See* http://phifty-50.com/home.htm (*see* Compl. at ¶ 13, last visited May 13, 2012).

---

[2] Lions Gate Entertainment, Inc., is an entertainment studio incorporated in the state of Delaware. Compl. ¶ 4, Exh. 10. Lions Gate's films have earned 55 Academy Award nominations and 10 Oscar wins over the past 10 years. *Id*. Summit Entertainment, LLC is a theatrical motion picture studio and limited liability company organized under the laws of Delaware. Compl. ¶ 5, Exh. 13. Mandate Pictures, LLC, is a film entertainment studio and a limited liability company organized under the laws of Delaware. Compl. ¶ 6, Exh. 11. Mandate was acquired by Lions Gate in 2007. *Id*.

[3] Compl. Exh. 12. *See also* National Public Radio, "Rogen, Reiser Go In '50/50' On A Few Sick Laughs" available at http://www.npr.org/2011/09/18/140543274/rogen-reiser-go-in-50-50-on-a-few-sick-laughs (last visited May 10, 2012).

[4] The Complaint lacks any allegations indicating why plaintiff Whitty would have standing to assert any claims, since it alleges only that he is "the manager of [plaintiff] Eastland Music Group," but it is Eastland Music Group which allegedly owns the trademark at issue. *See* Compl. ¶¶ 3, 11.

[5] PHIFTY-50 is sometimes used by Plaintiffs as a rap group's name, Compl. Exhs. 3-5, and sometimes to identify their record label. *Compare* http://phifty-50.com/home.htm (advertising PHIFTY-50's Debut Album titled "In Due Time" and songs titled "We Dem Boyz," "Down Here," "Livin Lavish," "The Dirty" and "If I Was a Thug.") *with* Compl. Exhs. 5-6 (displaying albums for sale on the "PHIFTY-50" label by artists "Ray Goody" or "Ray Goody & Lue Chue").

Plaintiffs have registered the trademark "PHIFTY-50" with the United States Patent and Trademark Office for use in connection with "electrical apparatus, namely, series of pre-recorded phonograph records, compact discs, audio and video cassettes, and DVDs featuring music…." *See* Compl. Exh. 1. While their registered trademark is for the distinctively spelled "Phifty-50," Plaintiffs also allege ownership of a common law trademark in the term "50-50."[6] Compl. ¶ 9.

Plaintiffs' goods bear a logo with "PHIFTY-50" written on a red and black interstate highway sign, with the word "PHIFTY" on top and the number 50 underneath in place of the interstate number. Compl. Exhs. 5, 7- 8. Plaintiffs sometimes also use the text "50/50" on the same shield design. Compl. Exhs. 2, 5. Plaintiffs allege that they distribute sound recordings and apparel under these alleged marks. *See* Compl. ¶¶ 9, 18, 22; Exhs. 1, 3-7. Plaintiffs do not allege that Defendants have used the word "PHIFTY" or the shield logo. Yet, Plaintiffs allege that "[t]he *title* of [the Film] is identical to EASTLAND's 50-50 Trademark." *Id*. ¶ 36 (emphasis supplied).

**The Term "50/50"**

The term "50/50" is a common synonym for 50% or an even chance of something occurring. It is such a regular part of our language that it appears in many dictionaries.[7] Indeed, both the Film and Plaintiffs employ this common phrase to describe a 50% chance of: (i) in the Film's case, dying of cancer; and (ii) in the Plaintiffs' case, making it out of their neighborhood.[8]

---

[6] The Complaint misleadingly defines Plaintiffs' website, "www.phifty-50.com," as the "50-50 website" and asserts that the "50-50" title constitutes use of common law "Eastland Trademarks." Compl. ¶ 13.

[7] *See, e.g.,* Merriam Webster Online Dictionary (defining fifty-fifty as ("**1:** shared, assumed, or borne equally <a *fifty–fifty* proposition> **2 :** half favorable and half unfavorable <a *fifty–fifty* chance>"). http://www.merriam-webster.com/dictionary/fifty-fifty (last visited May 14, 2012).

[8] There have been at least six other films, and four television shows or episodes titled with some variation of the term "Fifty-Fifty." [footnote continued]
http://en.wikipedia.org/wiki/Fifty-Fifty; http://www.imdb.com/title/tt0006679/ (1915 film);
http://www.imdb.com/title/tt0015804/ (1925 film); http://www.imdb.com/title/tt0359266/ (1981 film);

3

## ARGUMENT

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is meant to test the sufficiency of a complaint. and should be granted where the complaint is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When deciding a motion to dismiss, courts may consider not only the complaint's allegations, but also material which is incorporated by reference therein. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Accordingly, courts deciding Rule 12(b)(6) motions concerning Lanham Act claims have routinely taken judicial notice of the content of films and other expressive works. *See Felix the Cat Prods. v. New Line Cinema*, No CV 99-9339 RCx, 2000 WL 770481 at * 2 (C.D. Cal. Apr. 28, 2000) (court took judicial notice of allegedly infringing film, *Pleasantville*, and granted 12(b)(6) motion on Lanham Act claims); *Kent v. Universal Studios*, Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug 15, 2008) (court reviewed film at issue, *Charlie Wilson's War*, concluded that First Amendment barred Lanham Act claims, and granted 12(b)(6) motion); *cf. Peters v. West*, 776 F. Supp. 2d 742, 747 (N.D. Ill. 2011) (court reviewed allegedly infringed and allegedly infringing lyrics and dismissed copyright claim pursuant to Rule 12(b)(6)); *see also Capcom v. MKR Group*, No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) (court reviewed allegedly infringing video game before granting motion to dismiss Lanham Act claims); *Brown v. Electronic. Arts, Inc.*, 2009 U.S. Dist. LEXIS 131387 at * 2, n.1 (C.D. Cal. Sept. 23, 2009)

---

http://www.imdb.com/title/tt0217977/ (1982 film); http://www.imdb.com/title/tt0106902/ (1992 film); http://www.imdb.com/title/tt0406216/ (2004 film); http://en.wikipedia.org/wiki/Fifty_Fifty_%28comedy_show%29 (1980's television show); http://www.imdb.com/title/tt0444566/ (1997 game show); http://www.egytv.net/masr/Programs/5050.aspx (1998 television show); http://en.wikipedia.org/wiki/Fifty%E2%80%93Fifty_%28The_4400%29 (2006 television show episode). (all last visited May 14, 2012).

(taking judicial notice of defendants' video games; granting 12(b)(6) motion to dismiss Lanham Act claim on First Amendment grounds); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007) (reviewing *Family Guy* cartoon parody of Carol Burnett character and granting Rule 12(b)(6) motion to dismiss Lanham Act claim).

Here, Plaintiffs' claims are all based on the Film's title. Because the Film forms the basis of, and repeatedly is referred to in, the Complaint, the Court may consider the contents of the Film and the Film's packaging, submitted herewith, in deciding this motion.[9] The Court should dismiss the Complaint; to allow these palpably insufficient claims to go forward would offend the First Amendment and potentially chill artistic expression.

## POINT I

### THE FILM'S TITLE IS PROTECTED BY THE FIRST AMENDMENT, WHICH BARS PLAINTIFFS' LANHAM ACT CLAIMS

A. **The Rogers Test**

As noted above, the test articulated in *Rogers* and *Mattel* is widely used to determine whether Lanham Act claims against the title of an expressive work are barred by the First Amendment.[10] "The specific test contains two prongs. An artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance,

---

[9] The Film and packaging are submitted with the Declaration of Tom J. Ferber, dated May 10, 2012. Pursuant to the Court's rules, unpublished cases cited within this brief are attached hereto as an appendix.

[10] The Fifth, Sixth, and Ninth Circuits have adopted the Second Circuit's *Rogers* test. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 & n.7 (5th Cir. 1999) (citing *Rogers* and its progeny); *Eastern Tool Warehouse Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("*Jireh*") (applying *Rogers*); *Mattel,* 296 F.3d at 902 (same). The Seventh Circuit has not yet addressed this issue, but the *Rogers* test has been applied by district courts within the circuit. *See Dillinger, LLC v. Electronics Arts, Inc.*, No 1 09 CV 1236 JMS DKL, 2011 WL 2457678 at * 4 (S.D. Ind. June 16, 2011) (applying *Rogers*, dismissing claims and explaining that "[a]lthough the parties agree that the Court should adopt the test set forth by the Second Circuit in *Rogers*, the Seventh Circuit has not yet spoken on the propriety of this test"); *Woodard v. Jackson*, 2004 No 1 03 CV 0844 DFH , 2004 WL 771244, at * 7-9 (S.D. Ind. Mar. 25, 2004).

5

unless [it] explicitly misleads as to the source or the content of the work." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) ("*Rock Star II*") (quoting *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002) ("*Mattel*") (quoting *Rogers*, 875 F.2d at 999)).

The test is applied in light of the First Amendment principles, which mandate that "the Lanham Act [] be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression," *Rogers*, F.2d at 999, because "[t]rademark rights do not entitle the [mark's] owner to quash unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Mattel*, 296 F.3d at 900 (citing *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987). The *Rogers* test applies to Plaintiffs' Lanham Act claims under both 15 U.S.C. §1114 and 15 U.S.C. §1125(a).[11] *See Jireh*, 332 F.3d at 920-21, 926; *Cliffs Notes Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490, 495 (2d Cir. 1989).

*Rogers v. Grimaldi* concerned director Federico Fellini's film "Ginger and Fred," titled in reference to film star Ginger Rogers' collaboration with Fred Astaire. 875 F.2d at 996-97. The film was not about the iconic American film stars, but about two fictional Italian cabaret performers who earned their livings by imitating Rogers and Astaire. Rogers alleged that the use of her name in the film's title violated the Lanham Act, and argued that "First Amendment concerns are implicated [by Lanham Act claims] only where a title is so intimately related to the subject matter of a work that the author has no alternative means of expressing what the work is about." *Id*. at 998. The court disagreed, explaining that Rogers' proposed standard would "not

---

[11] Plaintiffs' First Claim purports to state a claim pursuant to 15 U.S.C. §1114 for Federal Trademark Infringement. Plaintiffs' Second Claim purports to state a claim pursuant to 15 U.S.C. §1125(a) for Federal Unfair Competition. Plaintiffs do not allege a third claim, but do allege claims numbered Four through Seven on state law grounds.

6

sufficiently accommodate the public's interest in free expression." *Id.* at 999. The court held that the First Amendment "precludes" Lanham Act claims premised upon the title of an expressive work unless the title "***has no artistic relevance to the underlying work whatsoever, or if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work.***" *Id*. at 99 (emphasis added). Finding *Ginger and Fred's* title not explicitly misleading as to the source of the film, and artistically relevant to the film's content, the court dismissed Rogers's Lanham Act claim. *Id*. at 1000-1005 (reasoning that "the slight risk that such use of a celebrity's name [in the title of an expressive work] might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable…. [The title] is clearly related to the content of the movie and is not a disguised advertisement for the sale of goods or services or a collateral commercial product.").

      **B.**      <u>**The Title "50/50" Has Clear Artistic Relevance To The Film's Story**</u>

As a preliminary matter, it cannot be overemphasized that the Film's title uses "50/50" in its everyday role – as a term of common parlance, not as a trademark and most certainly not as a reference to Plaintiffs (the very suggestion of which simply makes no sense).[12]

With respect to the *Rogers* test, the *Rogers* court emphasized that the first element of this test reflects an "appropriately low threshold of minimal artistic relevance." *Id*. at 998-99. Subsequent precedent has affirmed that the test for assessing artistic relevance is extremely low because of First Amendment considerations. *See Rock Star II*, 547 F.3d at 1100 ("only the use of a trademark with no artistic relevance to the underlying work ***whatsoever*** does not merit First

---

[12] *See Woodard*, 2004 WL 771244, at * 8 (noting that it would be "absurd to suggest" that defendants, Michael Jackson, The Jackson Five and their record company, would seek to gain some commercial advantage by confusing the public into believing that they might be buying sound recordings connected with plaintiffs, a little known group).

Amendment protection. In other words, the level of relevance **_merely must be above zero_**.") (quotation marks omitted) (emphasis supplied).[13]

In a recent case applying facts somewhat similar to those here, *Roxbury Entm't v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170, 1173(C.D. Cal. 2009), plaintiff, the owner of the trademark "Route 66," filed suit against the entities which had made a pornographic film with that same title. The film's only relationship to the "Route 66" interstate was that "[t]he 'story' unfolds at a roadside motel, to which the couple pulls up in a red convertible in the opening scene of the movie. Subsequent dialogue indicates that the couple is traveling and is 'on the run' from someone, who has sent someone to pursue them." *Id*. at 1173. The court found that even this minimal connection satisfied the first prong of the *Rogers* test and dismissed plaintiffs' claims as a matter of law. *Id*. at 1176. It follows *a fortiori* that in the present case, which presents a mainstream film with a title directly related to its storyline, the first prong of the test is met.

Similarly, in *Brown v. Electronic Arts*, *Brown v. Electronic Arts, Inc.*, former professional football player Jim Brown asserted Lanham Act claims against Electronic Arts ("EA") for allegedly using his character and career statistics in the football video game *Madden NFL.* 2009 U.S. Dist. LEXIS 131387 at * 2 (C.D. Cal. Sept. 23, 2009). The court dismissed the complaint pursuant to Rule 12(b)(6) because "even assuming that all material factual allegations in Brown's complaint are true, and viewing them in the light most favorable to Brown, EA's use

---

[13] This minimal standard comports with the general principle that courts should avoid evaluating the merit of protected speech. *See Yankee Publ'g Inc., v. News Am. Publ'g, Inc.*, 809 F. Supp. 267, 281 (S.D.N.Y. 1992) ("Except in rare and extreme cases … courts should avoid as much as possible making the protections of the First Amendment turn on the courts' assessment of literary success."); *see also Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) (Holmes, J.) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.").

8

of Brown's likeness in the *Madden NFL* games was not completely irrelevant to the games' content." *Id*. at * 12. Here, as in *Brown*, the First Amendment precludes Plaintiffs' claims.

In *Woodard*, Plaintiffs, owners of the trademark "*Ripples and Waves*," asserted Lanham Act claims against Michael Jackson premised upon the title of his album, "Ripples and Waves – An Introduction to Michael Jackson & the Jackson Five." 2004 WL 771244 at * 1. The court applied the *Rogers* test to the title of the disc, found the requisite minimal artistic relevance, and dismissed the claims pursuant to Rule 12(b)(6). *Id*. at * 9.

Finally, the court in *Dillinger*, found that the name "Dillinger" in reference to a Tommy Gun was artistically relevant to Defendants' *The Godfather* video game because "[t]he gentleman-bandit, commonly known for his public persona as a 'flashy gangster who dressed well, womanized, drove around in fast cars, and sprayed Tommy Guns,' has **above-zero** relevance to a game whose premise enables players to act like members of the mafia and spray Tommy Guns." 2011 WL 2457678, at * 5, *citing Roxbury*, 669 F. Supp at 1176 (emphasis supplied).

Here, it is beyond dispute that the title "50/50" has "at least some artistic relevance" to the Film, since the Film tells the story of a cancer patient with a 50/50 chance of survival. *See Rock Star II*, 547 F.3d at 1100; *Mattel*, 296 F.3d at 902 ("The *only* indication that Mattel might be associated with the song is the use of Barbie in the ***title***; if this were enough to satisfy this prong of the *Rogers* test, it would render *Rogers* a nullity.") (emphasis to word "title" supplied). The title is artistic expression protected by the First Amendment, since the relevance of "50/50" to the content of the Film is self-evident and indisputable.[14]

---

[14] Advertising and promotional materials distributed in connection with the Film also constitute protected artistic expression. *See e.g., Leopold v. Levin*, 45 Ill. 2d 434, 444 (1970) (finding that First Amendment protected both the use of plaintiff's name or likeness in film and in advertisements for it); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (advertisements for films were

9

### C. Plaintiffs Do Not And Cannot Allege That Defendants' Use Of The Title "50/50" Could Explicitly Mislead Consumers Into Thinking That The Film Is Related To Their Products

Like the "relevance" prong of the *Rogers* test, the "explicitly misleading" prong preserves First Amendment protections except in extraordinary cases. *Rock Star II*, 547 F.3d at 1101. Under this prong of the test, a work's title is not "explicitly misleading" absent some affirmative claim by defendant that the work originated with the plaintiff. *Dillinger,* 2011 WL 2457678, at * 8 ("Plaintiff points to no explicit misrepresentation—that fact alone is dispositive of this issue.") (*citing Rogers*, 875 F.2d at 999 and *Rock Star II*, 547 F.3d at 1100-1101). Accordingly, Lanham Act claims necessarily fail to satisfy the second prong of the *Rogers* test when the alleged claim of ownership or endorsement is premised upon the title of an expressive work.[15] *See e.g., Mattel*, 296 F.3d at 902 (title "Barbie Girl" could not explicitly mislead consumers that pop song emanated from Barbie toy manufacturer Mattel); *Jireh*, 332 F.3d at 937 (painting of Tiger Woods with other golfing legends did not explicitly mislead consumers despite use of registered mark TIGER WOODS in advertising and promotional materials for the painting).

A work's title could only "explicitly mislead" the public if the title is manifestly intended to affirmatively misrepresent the work's origin or content. *Rogers*, 875 F.2d at 999-1001 (explaining that an inclusion of subtitle "an authorized biography," if false, would constitute a misrepresentation sufficient to "explicitly mislead" consumers). Otherwise, the mere "risk of

---

"protected because the videos themselves are protected by the First Amendment… the advertising is incidental to the protected publication of the videos"); *Gugliemi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) ("Since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's publicity, the use of his identify in advertisements for the film is similarly not actionable").

[15] Here, the Film's title does not even use Plaintiff's mark, which is usually spelled "Phifty-50" and which appears in the logo of an interstate highway sign. The Film's title merely uses the common term "50/50," which can be found in many dictionaries.

misunderstanding, not engendered by any overt claim in the title, is so outweighed by the interests in artistic expression as to *preclude* application of the Lanham Act." *Id*. at 999-1000 (emphasis supplied). *See Roxbury*, 669 F. Supp. 2d at 1176 ("Mere use, without more, is insufficient to make the use explicitly misleading") (citation omitted).

There is no allegation in the Complaint from which one could plausibly draw the conclusion that Defendants committed any act to explicitly mislead consumers that the Film originated with "Phifty-50." It is well settled that the title of a *single* artistic work does not function as a source identifier. *See, e.g., In re Posthuma*, 45 U.S.P.Q.2d 2011, 2012 (TTAB 1998) ("[w]hile the title of a television or radio series may be registrable, a play is distinguishable because it is a single work, and the title of a single work does not function as a source indicator for that work"); *Mattel*, 296 F.3d at 902 ("Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."); *Application of Cooper*, 254 F.2d 611, 615-16 (C.C.P.A. 1958) (a "title… identifies a specific literary work… and is not associated in the public mind with the … manufacturer…") (internal quotation marks omitted); *see also Sugar Busters,* 177 F.3d at 269 ("The Trademark Trial and Appeal Board has consistently interpreted *Cooper* as prohibiting the registration of single book titles as trademarks."). The title "50/50" serves no source-identifying function.

Moreover, the Defendants' own logos and registered trademarks denote the Film's source and are displayed within the Film and on the Film's packaging and promotional materials. Compl. Exhs. 12, 14.[16] This recurring display of Defendants' marks in connection with "50/50"

---

[16] The first 30 seconds of the Film display Summit's and Mandate's respective marks, and the Film's credits begin with the text: "SUMMIT ENTERTAINMENT presents in association with MANDATE PICTURES… 50/50" Summit's and Mandate's respective marks are displayed on the lower left-hand

11

independently satisfies the second requirement of the *Rogers* test by ensuring that the Film's title could not "explicitly mislead" consumers as to its origin or content. *See Dessert Beauty, Inc., v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008), aff'd 329 Fed. App. 333 (2d Cir. 2009) ("[w]ords on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function"). It is Defendants' marks, not "50/50," which identify the Film's origin. *See, e.g., Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp. 2d 893, 901 (S.D. Tex. 2009) (dismissing Lanham Act claims against film studios in part because "'Defendants' use of the term 'Rin Tin Tin' described the content of the film []. 'Rin Tin Tin' was not a source identifier anywhere on the DVD cover or within the film, itself. []In fact, the only listed source identifiers on the DVD cover, disc, and within the film, itself, were [defendants] First Look Studios, Nu Image, Inc., M3 Media, Inc., and Millennium Films."); c*f. Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004) (inclusion of phrase *The Official Soundtrack to the Hit CBS TV Series* on the cover of soundtrack to reality television show SURVIVOR substantially mitigated any likelihood of confusion with Plaintiffs' SURVIVOR mark).

Finally, Plaintiffs – who produce rap music, and Defendants – who produce and distribute motion pictures, are in different businesses. Therefore, as the court stated in *Woodard*, in which it dismissed the plaintiffs' Lanham Act claims on 12(b)(6) motion, "at a most basic level, it is absurd to suggest that the Jackson 5 or their record company intended to gain some type of commercial advantage by attempting to confuse the music-buying public into believing they might be purchasing a product that has some connection with the [musical group *Ripples and Waves*]. The facts, as pleaded in detail, rule out any successful Lanham Act claim." 2004

---

corner of the DVD packaging and Summit's mark is additionally displayed on the spine of the DVD. Finally, Summit's mark is prominently displayed after the Film's final credits.

12

WL 771244, at * 9. The same logic applies here: it would be absurd to suggest that Defendants would mislead anyone to believe that the Film is associated with Plaintiffs' rap music label. *See, e.g.*, *Brown* at * 12-14 (dismissing Lanham Act claims on a 12(b)(6) motion and explaining that "[Brown's] mere presence in *Madden NFL* does not constitute an *explicit* attempt to convince consumers the Brown endorsed the games. Assuming that all material factual allegations in the Amended Complaint are true, and viewing them in the light most favorable to Brown, EA's use of Brown's likeness could not constitute an explicit attempt to signify that Brown endorsed the games"); *Kent v. Universal Studios*, Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug 15, 2008) (granting 12(b)(6) motion and dismissing Lanham Act claim by journalist based upon use of news footage in film *Charlie Wilson's War* and explaining that "[n]othing in the movie explicitly indicates that Kent has endorsed, approved, or even commented on the movie in which his work appears. In these circumstances, even if some members of the journalistic community or the public at large recognize his voice and conclude that he has some connection to the movie, his false endorsement claim fails because of the paramount First Amendment interest in artistic expression."); *see also Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 312 (S.D.N.Y. 2005) (dismissing claim pursuant to 12(b)(6) because two books were "so dissimilar that it is unlikely that a consumer would confuse one with the other").

When measured against the "explicitly misleading" standard, it is not just implausible, but inconceivable, that Defendants' use of the phrase "50/50" in the title of their Film could "dup[e] consumers into buying a product [i.e., the Film] they mistakenly believe is sponsored by the trademark owner [i.e., the Plaintiffs]."[17] *Rock Star II*, 547 F.3d at 1100 (quotation omitted).

---

[17] This is especially so given that Plaintiffs' rap records and apparel bear "Phifty-50" or "50/50" displayed in the distinctive highway sign logo.

13

The Film's title is protected artistic expression and Plaintiffs' claims are therefore not legally cognizable.

## POINT II

## PLAINTIFFS' STATE LAW CLAIMS ARE ALSO BARRED BY THE FIRST AMENDMENT

The First Amendment likewise bars Plaintiffs' state law unfair competition claims[18] and unjust enrichment claim because the substantive elements of those claims (which are all premised upon a protectable interest in the mark "PHIFTY-50" and Defendants' use of "50/50") are identical to Plaintiffs' Lanham Act claims. *See e.g., Spex, Inc., v. Joy of Spex*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ("[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act. Illinois courts look to federal case law and apply the same analysis to state infringement claims.") (citation omitted). Accordingly, because the First Amendment protects Defendants' use of "50/50" as the title of an expressive work, Plaintiff's state unfair competition and unjust enrichment claims also fail as a matter of law. *See e.g., Rock Star II*, 547 F.3d at 1101 ("the First Amendment defense applies equally to [plaintiff's] state law claims as to its Lanham Act claim.") (emphasis added); *see also, e.g., Roxbury*, 669 F.Supp.2d at 1173 (dismissing Lanham Act, unfair competition, and unjust enrichment claims pursuant to the First Amendment); *See Yankee Publ.,* 809 F. Supp. at 282; *Mattel. Inc. v. MCA Records. Inc.*, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998) (dismissing plaintiffs' claim for unjust enrichment since, *inter alia*, defendant had a First Amendment interest in parodying brand name).

---

[18] Plaintiffs' Fourth Claim is purportedly stated under 815 ILCS 510/2, the Illinois Uniform Deceptive Trade Practices Act. Plaintiffs' Fifth Claim is purportedly stated under Illinois Common Law Unfair Competition. Plaintiffs' Sixth Claim is purportedly stated under 815 ILCS 505 *et seq.*, the Consumer Fraud and Deceptive Business Practices Act.

## POINT III

## THE COURT SHOULD AWARD DEFENDANTS THEIR ATTORNEYS' FEES

A district court has discretion to award attorneys' fees to a prevailing party under the Lanham Act in "exceptional cases." *See* 15 U.S.C. § 1117(a). Exceptional circumstances can be found where, as here, a party's case is groundless, unreasonable or pursued in bad faith. *See, e.g., S Indus. v. Centra 2000*, Inc., 249 F.3d 625, 627 (7th Cir. 2001) ("[b]ased *solely on the weakness of S Industries' claims*, Judge Lindberg acted well within his discretion in granting attorneys fees.") (emphasis supplied). Here, Plaintiffs' claims are not only precluded as a matter of law, but are frivolous, and Defendants should be awarded their attorneys' fees.

## CONCLUSION

For all the reasons stated above, the Complaint should be dismissed for failure to state a claim, and Defendants should be awarded their attorneys' fees.

Dated this 14th day of May, 2012

> By: /s/ Tom J. Ferber
> Tom J. Ferber
> Ross M. Bagley
> PRYOR CASHMAN LLP
> 7 Times Square
> New York, New York 10036
> (212) 421-4100
>
> Joseph P. Bonavita
> GOULD & RATNER LLP
> 222 North LaSalle Street
> Suite 800
> Chicago, Illinois 60601
> (312) 236-3003
>
> *Attorneys for Defendants*