**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EASTLAND MUSIC GROUP, LLC | ) | |
| a Florida Limited Liability Company, | ) | |
| and RAYNARLDO WHITTY | ) | |
| | ) | |
| Plaintiffs, | ) | No. 11-cv-08224 |
| | ) | |
| v. | ) | |
| | ) | |
| LIONSGATE ENTERTAINMENT, INC., | ) | Hon. Judge Lindberg |
| a Delaware Corporation, | ) | |
| SUMMIT ENTERTAINMENT, LLC, | ) | |
| a Delaware Limited Liability Company, | ) | |
| and MANDATE PICTURES, LLC | ) | |
| a Delaware Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants' Motion disregards clear Seventh Circuit precedent instructing that affirmative defenses are not properly presented on a motion to dismiss. *Xechem v. Bristol-Meyers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004); *McCready v. eBay, Inc*., 453 F.3d 882, 892 n. 2 (7th Cir. 2006) ("[I]t is incorrect to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense.") While Defendants will have an opportunity to present its First Amendment defense on summary judgment, now is not the appropriate time.

Plaintiffs Eastland Music Group, LLC and Raynarldo Whitty (together "Plaintiffs") do not contest that movies and other works are worthy of First Amendment considerations. However, in addition to being procedurally premature, Defendants' selection and interpretation of the First Amendment case law is overreaching and overly broad. Under Defendants' theory, there is almost nothing that it cannot incorporate into its works. Every conceivable use is

considered to have artistic relevance and thus protected by the First Amendment. If Defendants' position is to be adopted by this Court, no trademark is safe from inclusion in Defendants' "creative works."

In this action, Plaintiffs allege that Defendants knowingly and intentionally chose to use Defendants' trademark. This selection was not inadvertent or coincidental, Defendant had full knowledge of Plaintiffs' trademark rights before it released its infringing movie and related merchandise. Plaintiffs warned Defendants that use of Plaintiffs' trademark in connection with Defendants' work would create confusion and requested that Defendants not use Plaintiffs' trademark. Defendants disregarded Plaintiffs' trademark rights and proceeded to use the trademark. As a result of Defendant's use, confusion has ensued.

Defendants focus entirely on its use of Plaintiffs trademark in the title of its work and overlook an important fact alleged in the Complaint and to be developed further in discovery – Defendants use of Plaintiffs' trademark is not limited to the title of its work, but extends to Defendants' merchandise such as t-shirts and CDs. Discovery will inform the court as to the nature and extent in which Defendants have used Plaintiffs' trademark and how consumers were confused by that use. It is important to note that the purchase of Defendants' merchandise sold under Plaintiffs' trademark may be an independent violation of Plaintiffs' intellectual property rights separate and apart from Defendants' movie.

## **FACTS NOT INCLUDED IN DEFENDANT'S BRIEF**

There are a number of important facts not included in Defendants' Motion but included in Plaintiffs' Complaint.

Plaintiffs are not merely a band; they operate an entertainment business that provides a wide array of goods and services. In 2000, Plaintiffs began using the 50-50 and PHIFTY-50

trademarks to identify the source of their entertainment services and products. Compl. ¶ 9-10. Plaintiffs have continuously used those trademarks over the last twelve years. *Id*. The goods and services provided under Plaintiffs' marks include: live entertainment; CDs featuring music, Compl. ¶16; DVDs featuring videos, Compl. ¶19; digital files containing audio and video content, Compl. ¶ 17; clothing products, Compl. ¶ 16; production and distribution of audio and video entertainment, Compl. ¶ 28; and production of audio and video content for use in advertising and video game industries, Compl. ¶ 29.

Due to Plaintiffs' extensive advertising, promotion, and sales over the last twelve years, the public recognizes the 50-50 and PHIFTY-50 trademarks and identifies Plaintiffs as the source of products bearing those marks. Compl. ¶ 30. Plaintiffs have spent and continue to spend substantial sums of money, time, and effort to develop, advertise, and promote their goods and services under the 50-50 and PHIFTY-50 trademarks through, in part, advertising campaigns and the 50-50 Website, www.phifty-50.com.[1] Compl. ¶ 31. As a result of these efforts, Plaintiffs trademarks have acquired extensive goodwill in the marketplace. Compl. ¶ 30.

Plaintiffs contacted Defendants on September 16, 2011, before the release of Plaintiffs' movie and requested that they not use Plaintiffs' trademark on and in connection with their movie and other merchandise. Compl. ¶ 42. Plaintiffs sent a second correspondence on September 28, 2011, again requesting that Defendants not use Plaintiffs' trademark. Compl. ¶ 43. Despite those requests, and with full knowledge of Plaintiffs' trademark rights, Defendants proceeded to use Plaintiffs' trademark on and in connection with their movie and related

---

[1] Defendants contend that referring to Plaintiffs' website as the "50-50 Website" is somehow misleading. However, Defendants do not dispute that upon opening Plaintiffs' website Plaintiffs' 50-50 trademark is prominently displayed on the website homepage and the viewer must click on the 50-50 trademark to enter the website. Compl. ¶ 14-15. *See* Compl. Ex. 2. Once inside, both the 50-50 and PHIFTY-50 trademarks are prominently displayed throughout the website.

merchandise. As a result of Defendants' activities, confusion has resulted and is likely to continue. Compl. ¶ 48.

## I. DEFENDANT'S FIRST AMENDMENT ARGUMENTS ARE NOT PROPERLY DECIDED AT THE PLEADING STAGE

### A. Precedent Prohibits Consideration of a First Amendment Affirmative Defense on a Rule 12(b)(6) Motion.

Pursuant to Supreme Court and Seventh Circuit precedent, this Court may not consider whether Defendants are protected by the First Amendment when ruling on a Rule 12(b)(6) motion. "Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem*, 372 F.3d at 901 (citing *Gomez v. Toledo*, 446 U.S. 635 (1980); *U.S. v. Northern Trust Co.*, 372 F.3d 886 (7th Cir. 2004); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003)). Accordingly, "[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem*, 372 F.3d at 901.

The Supreme Court has recently clarified the standard of review for a 12(b)(6) motion. To survive a motion to dismiss, the complaint must contain sufficient factual allegations which, accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012). Thus, a plaintiff "to survive dismissal 'must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009). To meet this plausibility standard, the complaint must supply enough facts to establish a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Indep. Trust Corp.*, 665 F.3d at 935.

The Seventh Circuit has made clear in numerous cases that a Rule 56 motion for summary judgment is the proper vehicle for analyzing whether a defendant has a valid affirmative defense. See, e.g., *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) ("A motion to dismiss was improper since release is an affirmative defense . . . and the existence of a defense does not undercut the adequacy of the claim."); *Bohac v. West*, 85 F.3d 306, 312 (7th Cir. 1996) (holding that consideration as a motion to dismiss was improper and plaintiff should have been able to introduce evidence on summary judgment regarding administrative time limits). Further, "under Rule 12(b), when 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 694 (N.D. Ill. 2002) (quoting *Bohac*, 85 F.3d at 311) (excluding all matters outside of the pleadings for the purposes of the motion to dismiss).

Defendants' First Amendment arguments constitute an affirmative defense. As such, this Court should decline to rule on Defendants' assertions of a First Amendment defense at this stage in the litigation.

**B. Plaintiff Should Have the Right to Engage in Discovery.**

Plaintiff was not required to plead in anticipation of affirmative defenses in its Complaint, and therefore, Plaintiff has not had adequate time or opportunity to discover information essential to opposing Defendants' claims of a First Amendment defense. *See Gomez*, 446 U.S. at 640; *Xechem*, 372 F.3d at 901. Furthermore, without discovery, this Court does not have sufficient information to properly rule on Defendants' defense, which requires analysis of core constitutional values.

The Supreme Court has made clear that courts should be wary of disposing of cases on a 12(b)(6) motion to dismiss where the factual basis of the litigation is novel or deals with First Amendment values. *Los Angeles v. Preferred Commc'ns, Inc.*, 476 U.S. 488 (1986). This litigation embodies both of the Court's concerns – the proper test for analyzing Defendants' affirmative defense is an issue unresolved in the Seventh Circuit and directly bears on First Amendment jurisprudence.

Defendant asks this Court to determine numerous fact intensive questions about the application of the First Amendment without the benefit of any evidence. As the Supreme Court noted in *Los Angeles*, "the conclusion that respondent's factual allegations implicate protected speech does not end the inquiry." *Id.* at 495. Should this Court decide that Defendants' various uses of Plaintiffs' trademark are protected speech, complicated factual questions must be analyzed about Defendants' use of Plaintiffs' trademark. These questions are the province of the jury, or alternatively, under the right circumstances, the Court on summary judgment (on a property developed factual record).

The records in nearly all of the cases cited in Defendants' Motion to dismiss exemplify the evidence needed to properly determine the outcome of these arguments. Unsurprisingly, almost all of these cases were decided at the summary judgment stage, not on a 12(b)(6) motion. See, e.g., *E.S.S. Entm't 2000, Inc. v. Rock Star Videos*, 547 F.3d 1095 (9th Cir. 2008); *ETW v. Jireh, 332 F.3d 915* (6th Cir. 2003); *Mattel Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).

Discovery is essential for illuminating the issues of Plaintiffs' Lanham Act claims. Defendants ask this Court to determine that the use of the Plaintiffs' trademark does not explicitly mislead the public without putting on any evidence whatsoever to prove its position.

In fact, the majority of the legal decisions on which Defendant relies were determined with the benefit of such information. In *ETW v. Jireh*, the court reviewed survey evidence which illustrated whether members of the public thought that Tiger Woods sponsored or approved a painting which depicted his likeness. 332 F.3d 915, 937-38 (6th Cir. 2003). In *Rogers v. Grimaldi*, the court analyzed the issues in light of a market research survey evaluating the public's perception of plaintiff Ginger Rogers' connection to an Italian film, as well as anecdotal evidence about the perceptions of the film studio's own employees. 875 F.2d at 997.

Because this case deals with a legal issue unresolved the Seventh Circuit and analysis of core constitutional values, this Court would benefit from further development of the factual record. "When the factual basis of the litigation is novel and there is a danger that today's holding, if uninformed, might control situations only dimly perceived at present, courts should proceed cautiously when asked to dismiss on the basis of the pleadings." *Rothner*, 929 F.2d at 302. Especially when core constitutional values are involved, courts "must take care not to terminate the litigation prematurely." *Id*. By declining to rule on the First Amendment issues at the pleadings stage, Plaintiffs will have a fair and adequate opportunity to gather evidence to properly rebut Defendants' affirmative defenses. Furthermore, as the Supreme Court recognized in *Los Angeles*, this Court will benefit by "simply know[ing] more about how the constitutional issues should be resolved." *Los Angeles*, 476 U.S. at 495.

## II. DEFENDANT'S RELIANCE ON THE FIRST AMENDMENT DEFENSE IS MISPLACED

Defendants argue that by construing their use of Plaintiffs' trademark as simply having "some" artistic relevance to one of their products (i.e., the infringing movie), they can obtain carte blanche immunity for appropriating Plaintiffs' trademark for extensive and ongoing uses in connection with marketing and distributing various goods. Defendants' reliance on the artistic

relevance defense is misplaced here for at least the following reasons: A) Defendants have not presented competent evidence of artistic relevance in their Motion; and B) Plaintiffs' defense does not implicate the First Amendment interests recognized in *Mattel* and *Rogers*.

### A. Defendants Have Not Presented Competent Evidence of Artistic Relevance In Support Of Their Motion

Defendants' statements in their Motion regarding the artistic relevance of the term "50-50" to their infringing uses must be disregarded because Defendants have not proffered any competent evidence of such. Should the court consider Defendants' Rule 12(b)(6) motion to be a motion for summary judgment, Defendant would be required to meet the requirements of Fed.R.Civ.Pro. 56 and support their allegation by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that Plaintiffs cannot produce admissible evidence to support the fact.

In arguing their claim for immunity under the artistic relevance defense, Defendants have failed to support their claim with any competent evidence, authenticated by a declaration or affidavit. The Defendants' evidence essentially amounts to one line of attorney argument in their Motion.

> Here, it is beyond dispute that the title "50/50" has "at least some artistic relevance" to the Film, since the Film tells the story of a cancer patient with a 50/50 chance of survival.

Motion at 9. No reference is made to materials in the record. No support by a declaration or affidavit is offered. In the absence of any competent evidence supporting Defendants' claim that the title "50/50" has "at least some artistic relevance" to the Film, the court must reject Defendants' assertion of the artistic relevance defense.

**B. Plaintiffs Defense Does Not Implicate The First Amendment Interests Recognized in *Mattel* and *Rogers*.**

Defendants contend that their choice to use Plaintiffs' trademark as the title of an expressive work and in connection with related goods is entitled to more protection under the First Amendment than the typical use of a trademark. In support of this contention, Defendants rely on the Second Circuit's opinion in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) and the Ninth Circuit's opinion in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002).

The First Amendment does not, however, grant carte blanche to use others' trademarks as they please. *Mattel*, 296 F.3d at 900-01 ("The First Amendment . . . offer[s] little protection for a competitor who labels its commercial good with a confusingly similar mark."); *Rogers*, 875 F.2d 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection. Nonetheless, they are also sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation.").

Rather, as Plaintiffs' own cases demonstrate, artistic expression only provides a defense where the defendant uses plaintiff's mark as part of a work of art that comments in some way on the mark itself or the product associated with it. *See, e.g., E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008); *Mattel*, 296 F.3d at 901-02; *Roxbury Ent'mt v. Penthouse Media Grp., Inc*., 669 F. Supp. 2d 1170, 1175-76 (C.D. Cal. 2009).

In *Rogers*, Ginger Rogers challenged a movie entitled "Ginger and Fred," about two Italian cabaret performers who imitated Ms. Rogers' well-known dance collaboration with Fred Astaire and became known in Italy as "Ginger and Fred." *Rogers*, 875 F.2d at 996-7. The film's use of the words "Ginger and Fred" thus was meant to invoke ideas of Ginger Rogers and Fred Astaire, and that allusion served an artistic purpose in the film. *Id*. at 1101. That was sufficient

to implicate the First Amendment.  In so holding, the Second Circuit held that the Lanham Act "[s]hould be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression."  875 F.2d at 999.  With respect to allegedly misleading titles, "that balance will not support application of the [Lanham] act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or content of the work."  Id.

In *Mattel*, the holder of the Barbie doll trademarks sued a Danish pop band for its use of the word "Barbie" in a song called "Barbie Girl," which mocked "Barbie and the values [the song's authors] claim[ed] she represent[ed]."  *Mattel*, 296 F.3d at 902.  The court held that the use of the term "Barbie" was an intentional reference to Mattel's trademarked product.  Thus, the First Amendment provided an absolute defense because the song title "clearly is relevant to the underlying work, namely, the song itself," *Id*. at 902.  For that reason, the otherwise unlawful use of Mattel's mark "Barbie" was protected speech.

The common thread in *Rogers*, *Mattel*, and similar cases is a well-known senior user seeking to prevent harm associated with the use of its trademark in the title of an expressive work authored by a junior user who intends an association with the senior user.  Such matters implicate the First Amendment interests recognized in *Mattel* and *Rogers*.  However, when the use of a trademark in the title of an expressive work is not intended to allude to the senior user, the Lanham Act's limitations on such use do not violate the First Amendment.

In *Masters Software, Inc. v. Discovery Communications, Inc.*, Masters created and began selling software named "CakeBoss" to professional bakers in 2007.  725 F.Supp.2d 1294, 1296 (WD Wash 2010).  In March 2009, Masters discovered that The Learning Channel was planning to introduce a new television show called "Cake Boss."  Over Masters' objections, the show

premiered in April 2009. Masters filed a trademark infringement suit in March 2010. In deciding Masters' motion for a preliminary injunction, the court analyzed Discovery's first amendment defense.

> Masters' claim against Discovery does not implicate the First Amendment interests recognized in *Mattel* and *Rogers*. Discovery did not choose the name of Cake Boss as an allusion to CakeBoss. Discovery was expressing nothing more than what any user of a suggestive trademark expresses when branding its product, and the Lanham Act's limitations on such "expressions" do not violate the First Amendment. *See, e.g., Mattel*, 296 F.3d at 900 (noting that when "limited to [their] core purpose -- avoiding confusion in the marketplace -- a trademark owner's property rights play well with the First Amendment"). Were it otherwise, the use of a trademark in the title of an expressive work would never violate the Lanham Act so long as it had some connection to the work's content. *Rogers* and *Mattel* do not express such a rule, but rather a balancing of expressive interests and trademark interests. Put in the language of the *Rogers* balancing test, the public interest in allowing Masters to avoid the consumer confusion that Cake Boss has created outweighs the expressive interests (if any) inherent in Discovery's choice of title.

*Id*. at 1306. (Finding a likelihood of confusion between Cake Boss and CakeBoss and granting Masters a preliminary injunction.)

In *Rebelution, LLC, v. Amando C. Perez*, the Plaintiff was a band that used the name Rebelution when it conducted business. 732 F.Supp.2d 883, 885 (ND Cal. 2010). Specifically, Plaintiff used the name in commerce in connection with downloadable musical sound recordings, pre-recorded compact discs, live performances, merchandising, clothing, and other related products and services. In addition, Plaintiff also used the name Rebelution in connection with the general advertising and promotion of its music. Defendant, also a musician, used the word Rebelution in the title of his album, Pitbull Starring In Rebelution. In holding that the *Rogers* test was inapplicable, the court found that Defendant would not be able to show that its use of the Rebelution mark referenced the meaning associated with the Plaintiff's mark.

> In every federal court of appeals case addressing the artistic adoption of plaintiff's non-generic mark, the artistic relevance of defendant's use of the mark related to

the meaning associated with plaintiff's mark. *See e.g., Rogers*, 875 F.2d at 996-97 (movie title referring to plaintiff Ginger Rogers); *Cliffs Notes v. Bantam Doubleday Dell Pub. Group*, 886 F.2d 490, 491 (2d. Cir. 1989) (publication allegedly parodying plaintiff's publication named Cliff Notes); *Twin Peaks Prods., Inc. v. Pubs. Int'l, Ltd.*, 996 F.2d 1366, 1370 (2d. Cir. 1992) (book title referring to plaintiff's television series named Twin Peaks); *MCA Records*, 296 F.3d at 899 (band referring to plaintiff's famous doll, Barbie); *ETW Corp. v. Jireh Pub., Inc*., 332 F.3d 915, 918-19 (6th Cir. 2003) (painting referring to plaintiff Tiger Woods); *Walking Mountain Prod*., 353 F.3d at 796 (photographer referring to plaintiff's famous doll, Bar-bie); *Rock Star Videos*, 547 F.3d at 1097 (video game maker allegedly referring to plaintiff's strip club). Defendants must thus show that they used plaintiff's mark to refer to the meaning associated with plaintiff's mark. No such showing has been made.

*Id*. at 889.

Thus, following Defendant's case law, Defendants must show – based on the allegations of the Complaint – that (1) their use of Plaintiffs' trademark has some artistic relevance to their underlying work, and that (2) their use of the trademark is not deliberately misleading. *Mattel*, 296 F.3d at 902; *Rogers*, 875 F.2d at 999.

### 1. Plaintiffs Have Alleged That Defendants Have Knowingly And Intentionally Caused Confusion.

Plaintiffs alleged that Defendants' use of their trademark was deliberately misleading. Compl. ¶ 61 ("LIONSGATE intentionally and willfully adopted and is using, in interstate commerce in connection with the advertising, promotion, and sale of their products, a similar mark that is intended by LIONSGATE to be substantially similar to, and a colorable imitation of, if not identical to, the EASTLAND Trademarks"). Thus, regardless whether Defendants' use of Plaintiffs' trademark has artistic relevance to Defendants' underlying work, their defense would fail. Defendants have no response to this, other than to deny the facts alleged in the Complaint. *See* Motion at 13 ("The same logic applies here: it would be absurd to suggest that Defendants would mislead anyone to believe that the Film is associated with Plaintiffs' rap music label."). Simply denying the facts alleged in the Complaint is not a basis for a motion to dismiss.

12

 2.    **Defendants Do Not Argue That They Are Using Plaintiffs' Trademark To Comment On Plaintiffs Or Its Products; They First Amendment Thus Does Not Apply**

Not only do the Plaintiffs' allegations foreclose Defendants' First Amendment defense, Defendants do not even argue that their use of Plaintiffs' trademark meets the threshold requirement of use as a way to comment on Plaintiff or its products.  To the contrary, Defendants affirmatively argue that use of Plaintiffs' trademark was "most certainly not as a reference to Plaintiffs (the very suggestion of which simply makes no sense)."  See Motion at 7.  Defendants thus fail to even to suggest that their use of Plaintiffs' trademark has artistic relevance to their underlying work.  This betrays a fundamental misunderstanding of the defense Defendants assert, and in any case demonstrates that they are not entitled to it.

Indeed, all of the cases Defendant cites demonstrate why they are wrong.   In *E.S.S. Entm't*, the defendant video game maker was entitled to a First Amendment defense against the plaintiff strip club owner because the game maker's inclusion of a strip club called "Pig Pen" in a scene in its game was a play on, and a comment on, the plaintiff's strip club "Play Pen."  547 F.3d 1100.  The First Amendment protected the defendant's use of the plaintiff's mark because the use was part of a broader effort to parody the neighborhood in which the plaintiff's strip club operated.

In *Roxbury*, the court held that the First Amendment protected the producer of a movie against claims that its film, "Route 66," infringed the "Route 66" trademark of the original TV series.  669 F. Supp. 2d at 1175-76.  The defendant's film opened with a scene at a roadside motel, and, like the original series, involved a story line based on travel by car. *Id*. at 1173.  For these reasons, the court held that the film was invoking the imagery of the original series for artistic reasons: "Defendant's use of 'Route 66' is relevant to the underlying work," the court

held, because "Defendants have introduced evidence demonstrating at least some relationship between the mental imagery associated with the term 'Route 66,' e.g., road trips, cross-country travel, and the content of Defendants' movie." *Id.* at 1175-76. In other words, the film invoked the original TV series' name and imagery as part of its own artistic plan. *See also, Rodgers* and *Mattel* discussed above.

In each of these cases, all of which Defendants cited, the First Amendment barred the Lanham Act (or similar) claims because the alleged infringer was using the Plaintiff's mark to comment on the plaintiff's product or to invoke that product for artistic purposes. Here, Plaintiff does not allege that Defendants use Plaintiffs' mark to comment on Plaintiffs' goods or services or anything else about Plaintiffs. Nor do Defendants claim that they use the Plaintiffs' trademark to comment on Plaintiffs or their goods or services. Instead, Defendants simply argue that they used the Plaintiffs' trademark as the title of a film and it is, therefore, protected speech. That statement is not enough to invoke the First Amendment protection from an infringement claim.

To the contrary, Defendant is promoting and distributing a movie, selling DVDs, selling t-shirts, and is or will likely be selling additional products as Plaintiffs alleged in their Complaint, and capitalizing on Plaintiffs' trademark to do it. That supports a trademark infringement claim.

## III. THE FIRST AMENDMENT DOES NOT BAR PLAINTIFFS' STATE LAW ACTIONS

Defendants make no separate arguments for the dismissal of Plaintiffs' state law claims. Instead, in a shotgun approach, Defendants simply argue that these claims survive or fail along with the statutory claims. Once again, Defendants have it only partly right. The case Defendants cite, *Spex, Inc., v. Joy of Spex*, 847 F. Supp. 567, 579 (N.D. Ill. 1994), is inapposite because the court there found that the mark being asserted by Plaintiff Spex was merely descriptive and

without secondary meaning.  Thus, Spex did not have a protectable trade name on which it could prevail under the Lanham Act or its state law claims.  In stark contrast, Plaintiffs claims in this action are based on its federally registered trademark, PHIFTY-50, and common law trademark, 50-50.  Neither of those rights have been contested by Defendants.  Further, since the First Amendment Defense is inapplicable in this matter, as discussed above, it does not bar Plaintiffs' state law claims.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request this Court to deny Defendants' Motion to Dismiss.

Dated:  May 29, 2012                                  Respectfully submitted,

/s/ Ronald A DiCerbo

Ronald A. DiCerbo
Hopeton Walker
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Office:  (312) 775-8000
Fax:  (312) 775-8100
Email:   rdicerbo@mcandrews-ip.com

*Attorneys for Plaintiffs,*
EASTLAND MUSIC GROUP, LLC
and RAYNARLDO WHITTY

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2012, I electronically filed the foregoing **PLAINTIFFS'**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the clerk of the Court
using the CM/ECF system which will send notification of such filing to all counsel of record.


/s/  Ronald A. DiCerbo_____