UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EASTLAND MUSIC GROUP, LLC, a Florida Limited Liability Company, and RAYNARLDO WHITTY<br><br>          Plaintiffs,<br><br>  v.<br><br>LIONSGATE ENTERTAINMENT, INC., a Delaware Corporation, SUMMIT ENTERTAINMENT, LLC, a Delaware Limited Liability Company, and MANDATE PICTURES, LLC, a Delaware Limited Liability Company,<br><br>          Defendants. | Case No: 11-cv-08224<br><br>Judge Lindberg |

**DEFENDANTS SUMMIT ENTERTAINMENT LLC'S, MANDATE PICTURES, LLC'S, AND LIONS GATE ENTERTAINMENT, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Dated: New York, New York
      June 5, 2012

Tom J. Ferber
Ross M. Bagley
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

Joseph P. Bonavita
GOULD & RATNER LLP
222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
(312) 236-3003

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................2

    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE PRESENT MOTION ...........2

        A.  The Complaint Incorporates The Film..........................................................................3

        B.  The Court Needs Only The Film To Apply The
            *Rogers/Mattel* Test, Which Requires Dismissal Of Plaintiffs' Claims ........................5

        C.  Plaintiffs' Frivolous Claims Do Not Require Discovery..............................................8

        D.  Commentary Is Not Necessary For First Amendment Protection; Use of
            Common Words For Artistic Works' Titles Is Also Entitled To Protection ...............11

        E.  Plaintiffs' State Law Claims Should Also Be Dismissed ...........................................12

CONCLUSION.................................................................................................................13

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE(s)</u>

*Anago Franchising, Inc. v. IMTN, Inc.*,
    No. 11-2639, 2012 WL 1392996 (7th Cir. Apr. 23, 2012) ..........................................6, 7, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................9

*Barger v. Playboy Enterprises*,
    564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984)........................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................3, 9

*Brown v. Electronic Arts, Inc.*,
    2:09-c 2009 U.S. Dist. LEXIS 131387 (C.D. Cal. Sept. 23, 2009) ...........................3, 4, 5

*Burnett v. Twentieth Century Fox Film Corp.*,
    491 F. Supp. 2d 962 (C.D. Cal. 2007) ...............................................................................4

*Capcom v. MKR Group*,
    No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008)....................................11

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) ..............................................................................................4

*In re Cooper*,
    254 F.2d 611 (C.C.P.A. 1958) ...........................................................................................8

*Dessert Beauty, Inc., v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 329 Fed. App. 333 (2d Cir. 2009)................7

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965).............................................................................................................9

*E.S.S. Entertainment 2000 v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ..........................................................................................13

*ETW Corp. v. Jireh Publishing, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ..........................................................................................5, 6

*Felix the Cat Products v. New Line Cinema, No CV 99-9339 RCx*,
    2000 WL 770481 (C.D. Cal. Apr. 28, 2000) .....................................................................5

**CASES**                                                              PAGE(s)

*GMP Technologies, LLC v. Zicam, LLC*,
   No. 08 C 7077, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009) ................................6

*Gimix, Inc. v. JS & A Group, Inc.*,
   699 F.2d 901 (7th Cir. 1983) ...................................................................12, 13

*Kent v. Universal Studios*,
   Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug 15, 2008)........................3, 5

*Le Book Publishing, Inc. v. Black Book Photography, Inc.*,
   418 F. Supp. 2d 305 (S.D.N.Y. 2005)..................................................................7

*Looper Maintenance Serv. Inc. v. City of Indianapolis*,
   197 F.3d 908 (7th Cir.1999) .................................................................................3

*Los Angeles v. Preferred Communications, Inc.*,
   476 U.S. 488 (1986)...........................................................................................10

*Massey v. Merrill Lynch & Co.*,
   464 F.3d 642 (7th Cir. 2006) ...............................................................................4

*Masters Software, Inc. v. Discovery Communs., Inc.*,
   725 F. Supp. 2d 1294 (W.D. Wash. 2010)....................................................11, 12

*Mattel, Inc. v. MCA Records. Inc.*,
   28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002).....................13

*Mattel, Inc. v. MCA Records. Inc.*,
   296 F.3d 894 (9th Cir. 2002) ...........................................................................5, 8

*Peters v. West*,
   776 F. Supp. 2d 742 (N.D. Ill. 2011) ..................................................................4

*Publications International, Ltd. v. Leapfrog Enterprises*,
   No. 01 C 3876, 2002 WL 31426651 (N.D. Ill. Oct. 23, 2002)............................4

*Rebelution, LLC v. Perez*,
   732 F. Supp. 2d 883 (N.D. Cal. 2010) ...............................................................11

*Rin Tin Tin, Inc. v. First Look Studios, Inc.*,
   671 F. Supp. 2d 893 (S.D. Tex. 2009) .................................................................7

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)........................................................................ *passim*

**CASES**                                                                                      **PAGE(s)**

*Roxbury Entertainment v. Penthouse Media Group, Inc.,*
    669 F. Supp. 2d 1170 (C.D. Cal. 2009) ..........................................................12, 13

*SB Designs v. Reebok International, Ltd.,*
    338 F. Supp. 2d 904 (N.D. Ill. 2004) ...................................................................12

*Spex, Inc. v. Joy of Spex, Inc.,*
    847 F. Supp. 567 (N.D. Ill. 1994) ........................................................................13

*Stayart v. Yahoo! Inc.,*
    651 F. Supp. 2d 873 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) ..................6, 7

*Suzuki Motor Corp. v. Consumers Union,*
    330 F.3d 1110 (9th Cir. 2003) .............................................................................10

*Tierney v. Vahle,*
    304 F.3d 734 (7th Cir. 2002) ................................................................................4

*Washington Post Co. v. Keogh,*
    365 F.2d 965 (D.C. Cir. 1966) ............................................................................10

*Wilson v. Price,*
    624 F.3d 389 (7th Cir. 2010) .............................................................................3, 9

*Woodard v. Jackson,*
    2004 No. 1:03-CV-0844-DFH, 2004 WL 771244 (S.D. Ind. Mar. 25, 2004) .......3, 5, 8, 12

*Xechem v. Bristol-Meyers Squibb Co.,*
    372 F.3d 899 (7th Cir. 2004) ................................................................................3

**STATUTES**

Fed. R. Civ. P. 12(b)(6)............................................................................ *passim*

## PRELIMINARY STATEMENT

Faced with the indisputable relevance of the everyday term "50/50" to the content of the Film – which tells the story of a cancer patient's pursuit of a cure with no better than a 50% chance of survival – Plaintiffs grasp for any argument with which to save their frivolous claims. First, they argue that a motion to dismiss is premature and that they "have not had adequate time or opportunity to discover information essential" to overcome the First Amendment bar to their claims.[1] However, Plaintiffs conspicuously fail to identify any information they propose to discover which would supposedly rescue their claims, and they studiously ignore the fact that the *only* evidence pertinent to the requisite constitutional inquiry – whether "50/50" is relevant to the Film's content and whether it explicitly misleads the public as to the Film's source – is the Film itself, which is part and parcel of the Complaint and which is before the Court on Defendants' motion. Then, in a similar vein, Plaintiffs inexplicably argue that Defendants' 12(b)(6) motion should be denied because Defendants have not presented "competent evidence" (P. Opp. at 8), again ignoring that the only "evidence" that is appropriate or necessary to adjudicate the motion is the Film, the content of which is beyond dispute. Plaintiffs also argue that the First Amendment protections accorded the Film should not extend to uses on "various goods" (P. Opp. at 7), but they fail to offer any reason why their claims should not be dismissed as against the admittedly constitutionally-protected Film, leaving only the claim of Defendants' alleged sale, if any, of these unidentified "goods." Finally, attempting to distinguish the constitutional bar to their claims, Plaintiffs offer the specious argument that the First Amendment's protection for artistic expression applies only to titles of works intended to satirize, ridicule or demean a trademark holder or its goods, but not to works such as the Film, which uses a common term in its everyday sense to describe the dilemma of the Film's protagonist. Plaintiffs do not dispute,

---

[1] Plaintiffs Opposition To Defendants' Motion To Dismiss ("P. Opp.") at 5.

and therefore concede, the points that the Film does not use "50/50" as a source-identifier[2] and that the Complaint states no basis for a claim by plaintiff Raynarldo Whitty.

Plaintiffs also try to oppose Defendants' motion by setting up a straw man: while acknowledging that the Film is protected artistic expression, Plaintiffs argue that Defendants' motion should be denied lest "every conceivable use" of a mark would be deemed protected, so that "no trademark [would be] safe." (P. Opp at 1-2.) Plaintiffs' feigned alarm is patently baseless, since the evaluation of the title and content of every work of artistic expression is, like the work itself, *sui generis*. Thus, dismissing Plaintiffs' claims on this motion pursuant to established constitutional jurisprudence would in no way threaten the "safety" of other marks.

Plaintiffs' claims are untenable as a matter of law. The Constitution and the applicable jurisprudence preclude Plaintiffs from asserting dominion over a common term and then chilling speech by holding that term for ransom when it is used in its everyday sense in a work of artistic expression. The Complaint, which represents a cynical assault on the freedom of expression, should be dismissed.

## ARGUMENT

## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE PRESENT MOTION

Plaintiffs do not dispute that a complaint should be dismissed if its allegations are not plausible or the claims asserted are not legally cognizable. Plaintiffs also "do not contest" that motion pictures enjoy First Amendment protections, but repeatedly argue that "without discovery, this Court does not have sufficient information to properly rule [on Defendants' motion], which requires analysis of core constitutional values." (P. Opp. at 5.) Plaintiffs' arguments, however, ignore the elephant in the room – that the Film, which is the subject of the Complaint, is before

---

[2] *See* Defendants' Moving Brief ("Moving Br.") at 11-12. Plaintiffs also ignore the fact that their registered trademark is the distinctively spelled "Phifty-50," and not the common term "50/50."

the Court on this motion. Plaintiffs also fail to identify any evidence they propose to unearth in discovery which could alter the Court's application of these "core constitutional values" to the Film as a matter of law and they offer erroneous distinctions of applicable case law.

To withstand a 12(b)(6) motion to dismiss, the allegations of a complaint must support *"some viable legal theory."* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation & quotations omitted; emphasis supplied); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir. 1999) ("a complaint must allege facts bearing on all material elements necessary to sustain a recovery under some viable legal theory.") (citation & quotation omitted). "Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (citation & quotations omitted). If a complaint admits all of the elements of an impenetrable defense, it must be dismissed because plaintiff has "plead itself out of court." *Xechem v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). In this case, Plaintiffs' claims fail not because of the absence or presence of any particular factual evidence, but as a matter of law, and Plaintiffs ignore the fact that among the legion of cases dismissing such claims as a matter of law under the *Rogers* and *Mattel* test, several have done so on 12(b)(6) motions. *See Woodard v. Jackson*, 2004 No. 1:03-CV-0844-DFH, 2004 WL 771244, at *7-9 (S.D. Ind. Mar. 25, 2004)[3] (applying *Rogers* and granting 12(b)(6) motion to dismiss); *Brown v. Electronic Arts, Inc.*, 2:09-cv-01598-FMC-RZx, 2009 U.S. Dist. LEXIS 131387, at *12 (C.D. Cal. Sept. 23, 2009) (same); *Kent v. Universal Studios*, Case No. CV 08-2704 GAF, at p. 2-6 (SHx) (C.D. Cal. Aug 15, 2008) (same).

---

[3] Pursuant to the Court's rules, unpublished cases cited within this brief, which were not included in the appendix to Defendants' moving brief, are attached hereto as a supplemental appendix.

A.    **The Complaint Incorporates The Film**

Because the Film is central to Plaintiffs' claims and is referenced in the Complaint, the Film is deemed part of the Complaint for the purposes of Defendants' motion to dismiss. *See e.g., Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (Posner, J.) (a plaintiff should not be able to evade dismissal under Rule 12(b)(6) "simply by failing to attach to his complaint a document that proved that his claim had no merit.") (citation omitted). While Plaintiffs chose not to attach the Film to the Complaint (presumably because of the reason noted by Judge Posner – *i.e.*, that it would prove their claim is bereft of merit), the Film *is* before the Court on this motion. (Ferber Decl. Ex. A.) *See Publications Int'l, Ltd. v. Leapfrog Enters.*, No. 01 C 3876, 2002 WL 31426651, at *1 n.2 (N.D. Ill. Oct. 23, 2002) (dismissing Lanham Act claim and explaining that "[i]n distilling the factual background of the instant dispute, the court is not limited merely to the allegations in the complaint and exhibits attached thereto. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are both central to the plaintiff's claim and referenced in the complaint.") (citation omitted).

The Court may therefore consider the Film – the content of which speaks for itself and is beyond dispute – in deciding Defendants' motion. *See e.g., Peters v. West*, 776 F. Supp. 2d 742, 747 (N.D. Ill. 2011) (analyzing song lyrics); *Brown*, 2009 U.S. Dist. LEXIS 131387 at *2, n.1 (analyzing video game); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007) (analyzing cartoon). "To the extent that the [Film] contradict[s] the Complaint, the [Film] trump[s] the facts or allegations presented in the Complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (citations omitted); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) ("where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.") (citation omitted).

4

Because the Film is dispositive of Plaintiffs' claims, they should be dismissed for the reasons set forth below and in Defendants' moving brief. *See e.g.*, *Felix the Cat Prods. v. New Line Cinema*, No CV 99-9339 RCx, 2000 WL 770481, at *2 (C.D. Cal. Apr. 28, 2000) (court took judicial notice of allegedly infringing film and dismissed Lanham Act claims); *Kent v. Universal Studios*, Case No. CV 08-2704 GAF (SHx) (C.D. Cal. Aug 15, 2008) (same).

### B. The Court Needs Only The Film To Apply The *Rogers/Mattel* Test, Which Requires Dismissal Of Plaintiffs' Claims

The parties agree that the *Rogers/Mattel* test provides that when the alleged use of a plaintiff's trademark is within the title of an artistic work, the use is non-infringing if the title has (a) some artistic relevance to the content of the work; and (b) is not explicitly misleading as to the origin of the work. *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) (only a "misleading title with no artistic relevance cannot be sufficiently justified by a free expression interest."). Plaintiffs concede that the Film is artistic expression entitled to First Amendment protections. (P. Opp. at 1.) The Film tells the anguishing tale of a young man suddenly faced with his own mortality when he discovers he has only a 50/50 chance of surviving cancer. The title's artistic relevance to the Film is beyond dispute. This satisfies the first *Rogers* prong.

The Court can also conclude as a matter of law that the Film's title does not "explicitly mislead" consumers. *See Rogers*, 875 F.2d at 1005 (holding, as a matter of law, that film title "Ginger and Fred" was not explicitly misleading regarding source or content of film); *Mattel. Inc. v. MCA Records. Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (song titled "Barbie Girl" was, as a matter of law, not explicitly misleading that song originated with toy company); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 937 (6th Cir. 2003) (painting of Tiger Woods, as a matter of law, not "explicitly misleading" that the painting originated with or was endorsed by Tiger Woods); *Woodard*, 2004 WL 771244, at *9 (dismissing claim on 12(b)(6) because album title

5

not explicitly misleading); *Brown*, 2009 U.S. Dist. LEXIS 131387, at *12-14 (granting motion to dismiss because use of celebrity likeness in video game not explicitly misleading). Because the Film itself indisputably satisfies both prongs of the *Rogers* test, Plaintiffs have pleaded themselves out of court. *See generally, Anago Franchising, Inc. v. IMTN, Inc.*, No. 11-2639, 2012 WL 1392996 (7th Cir. Apr. 23, 2012); *GMP Techs., LLC v. Zicam, LLC*, No. 08 C 7077, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 880 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010).

Plaintiffs misleadingly cite to *Rogers* and *Jireh* to argue that survey evidence is necessary for the Court to adjudicate this case, but these cases do not support Plaintiffs' argument because the courts in both cases ruled that the plaintiff's claims had to be dismissed as a matter of law. Indeed, the *Rogers* court actually rejected the plaintiff's survey evidence, explaining that "[t]he survey evidence, even if its validity is assumed, indicates at most that some members of the public would draw the incorrect inference that Rogers had some involvement with the film. But that risk of misunderstanding, not engendered by any overt claim in the title, is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *Rogers*, 875 F.2d at 1001 (emphasis added). The *Jireh* court similarly rejected the plaintiff's survey evidence, stating that "[w]e find, like the court in *Rogers*, that plaintiff's survey evidence, even if its validity is assumed, indicates at most that some members of the public would draw the incorrect inference that Woods had some connection with Rush's print. The risk of misunderstanding, not engendered by any explicit indication on the face of the print, is so outweighed by the interest in artistic expression as to preclude application of the Act." *ETW Corp.*, 332 F.3d at 937. Thus, these cases actually undermine Plaintiffs' argument that survey (or other) evidence is necessary to the adjudication of their claims.

Plaintiffs deliberately misstate the second element of the *Rogers/Mattel* test in an effort to mislead the Court by laying a false foundation for their argument that their allegation "that Defendants' use of ["50/50"] was *deliberately* misleading" should enable them to survive the second prong of the *Rogers/Mattel* test (P. Opp. at 12). Whether a plaintiff's claims survive the second prong of the *Rogers/Mattel* test, however, is not a matter of what the plaintiff has alleged; rather, the *court* must find that the alleged use of the plaintiff's mark in the title of the defendant's work was (or could be) "*explicitly* misleading." As noted, the Court may rule on this as a matter of law. Plaintiffs' argument is not only misleading, but absurd, because if a mere allegation that a defendant had "intentionally" or "deliberately" used a plaintiff's alleged mark in a title were sufficient to survive *Rogers/Mattel*, as Plaintiffs suggest (P.Opp. at 12), that test would be rendered meaningless.

Plaintiffs also do not dispute Defendants' point that the title of the Film does not constitute a source-identifying (i.e., "trademark") use (*see* Moving Br. at 11-12), nor could they plausibly allege or argue otherwise. Defendants identify the origin of the Film by displaying their "Mandate" and "Summit" trademarks prominently on the Film's packaging and within the Film. (*See* Ferber Decl. Exh. A.)[4] Plaintiffs also concede (by not disputing) that titles of

---

[4] This display dispels any potential confusion. *See, e.g., Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp. 2d 893, 901 (S.D. Tex. 2009) (no likelihood of confusion as a matter of law because the film at issue displayed the production studio's trademarks); *Dessert Beauty, Inc., v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008), *aff'd*, 329 Fed. App. 333 (2d Cir. 2009) (no likelihood of confusion where defendants prominently display mark on good). Furthermore, the Film's title looks nothing like Plaintiffs' registered mark; even without Plaintiffs' mark's distinctive Shield Logo. (*See* Compl. Exhs. 2, 5.) Plaintiffs' distinctively spelled registered mark, "Phifty-50," is notably different from the Film's title, "50/50." Plaintiffs and Defendants are in completely different businesses; Plaintiffs produce hip hop and rap entertainment in Jacksonville, Florida; Defendants distribute theatrical motion pictures. Plaintiffs' own factual allegations undermine their position. *Anago Franchising, Inc.*, 2012 WL 1392996, at *3 (dismissing Lanham Act claim for failure to plausibly allege likelihood of confusion); *Stayart*, 651 F. Supp. 2d at 883 ("This allegation contravenes the likelihood of confusion, and Stayart pleaded herself out of court on her Lanham Act claim."). Here, upon review of the exhibits to the Complaint and the Film, the Court can readily conclude as a matter of law that there is no likelihood of confusion. *Id; Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 312 (S.D.N.Y. 2005) (dismissing

expressive works are not trademarks, but part of the works. *See Mattel*, 296 F.3d at 902 ("Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."); *In re Cooper*, 254 F.2d 611, 615-16 (C.C.P.A. 1958) (titles are not registrable as trademarks). Plaintiffs cannot, therefore, plausibly allege that the Film's title acts as a source-identifier.

Nor can Plaintiffs plausibly allege that the Film's title was perceived by the public as indicating that the Film either originated or was otherwise associated with Plaintiffs. Recently, the District Court for the Southern District of Indiana, applying *Rogers* to a similar claim that Michael Jackson had titled his album in reference to plaintiffs' band *"Ripples and Waves,"* explained that "at a most basic level, it is absurd to suggest that the Jackson 5 or their record company intended to gain some type of commercial advantage by attempting to confuse the music-buying public into believing they might be purchasing a product that has some connection with the [musical group *Ripples and Waves*]. The facts, as pleaded in detail, rule out any successful Lanham Act claim." *Woodard*, 2004 WL 771244, at *9. Here, as in *Woodard*,[5] Plaintiffs' allegations, even accorded every favorable inference, cannot satisfy the Rule 12(b)(6) plausibility standard.

## C. **Plaintiffs' Frivolous Claims Do Not Require Discovery**

While Plaintiffs argue that they are entitled to discovery to "develop" their claims, they never identify what "discovery" could change the analysis of the *Rogers/Mattel* test. Both the Complaint and Plaintiffs' Opposition fail to "supply enough facts to establish a reasonable

---

claim pursuant to 12(b)(6) because two books were "so dissimilar that it is unlikely that a consumer would confuse one with the other").

[5] Plaintiffs deliberately distort Defendants' citation to *Woodard* in their moving brief, where Defendants noted that Plaintiffs' allegations about Defendants' intent to mislead was as "absurd" as the plaintiff's claim in *Woodard*. Defendants herein were not "denying the facts alleged in the Complaint," as Plaintiffs argue (P. Opp. at 12); rather, they were showing that the same logic applied by the *Woodard* court supports dismissal of Plaintiffs' claims on the present motion. (*See* Moving Br. at 12-13.)

expectation that discovery will yield evidence supporting the plaintiff's allegations." *Anago Franchising, Inc.*, 2012 WL 1392996, at *2, citing *Twombly*, 550 U.S. at 556 (emphasis added). While "Rule 8 [of the Federal Rules of Civil Procedure] marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era…it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (emphasis added). Because Plaintiffs fail to (and could not) identify any documents or evidence that could possibly save their claims from dismissal as a matter of law, Defendants' motion should be granted. *See Wilson*, 624 F.3d at 392 ("Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.") (citations & quotations omitted). Here, it is beyond doubt that no discovery would enable Plaintiffs to overcome *Rogers* and *Mattel*.

Contrary to Plaintiffs' argument, Defendants do <u>not</u> ask this Court "to determine numerous fact intensive questions about the application of the First Amendment without the benefit of any evidence." (P. Opp. at 6.) Defendants do not ask the Court to decide <u>any</u> disputable facts at all; they seek only to have the Court review the Film in light of applicable jurisprudence. Significantly, Plaintiffs do not argue that the *Rogers* and *Mattel* test does not apply, only that the Court lacks unspecified "evidence" – an argument which ignores the presence of the Film in the record on this motion.

Plaintiffs' conclusory plea for discovery should also be rejected because, as the Supreme Court has recognized, "[t]he chilling effect upon the exercise of *First Amendment* rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Indeed, "the costs of a successful

defense can be the same or greater than what the damage awards would have been." *Suzuki Motor Corp. v. Consumers Union*, 330 F.3d 1110, 1142-43 (9th Cir. 2003).

In *Barger v. Playboy Enterprises*, plaintiffs sued Playboy Magazine alleging that a story detailing the experiences of an undercover narcotics agent who had infiltrated the notorious Hells Agent's motorcycle club was defamatory. 564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984). After identifying numerous problems with the complaint, including a failure to specifically identify the victim of the alleged defamation, and inadequate allegations of malice, *id.* at 1153-1157, the court noted that dismissal was particularly appropriate because of the First Amendment interests at stake:

> The danger that suits based on such flimsy allegations of malice would pose to freedom of speech and of the press if allowed to proceed is only too clear. As Judge Skelly Wright has observed, the cost of defending even truthful publications is so great that "unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors."

*Id.* at 1157, quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). Comparable First Amendment interests support dismissal here.

Plaintiffs erroneously rely on *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488 (1986), for the proposition that the Court should be wary in in deciding First Amendment issues on 12(b)(6) motions, but that decision is inapposite. The plaintiffs in that case challenged government action that they alleged violated the free speech clause in the First Amendment. *Id.* at 491.[6] The court found that, under the facts of that case, First Amendment interests would be protected by further development of the record to potentially substantiate the plaintiffs' claims.

---

[6] Further, in that case, there were complicated factual issues that are not present here. *Los Angeles*, 476 U.S. at 495 ("We think that we may know more than we know now about how the constitutional issues should be resolved when we know more about the present uses of the public utility poles and rights-of-way and how respondent proposes to install and maintain its facilities on them.").

Here, denial of Defendants' 12(b)(6) motion and allowing Plaintiffs' palpably meritless claim to proceed would _disserve_ artistic expression and protected speech.

### D. Commentary Is Not Necessary For First Amendment Protection; Use of Common Words For Artistic Works' Titles Is Also Entitled To Protection

Plaintiffs make the untenable argument that the Film's title is not entitled to First Amendment protection because the Film does not represent a satire or commentary about Plaintiffs. The very suggestion of such a standard is ridiculous: taken to its logical conclusion, Plaintiffs' position is that a title _is_ protected if it deliberately invokes a famous trademark (e.g., "Barbie") in order to ridicule or satirize the products whose goodwill that mark represents, but a title that uses a common term for its everyday meaning in regular parlance on a work which does _not_ concern a plaintiff exposes the creator to liability as a result of the plaintiff's desire to monopolize that common term.

In _Capcom v. MKR Group_, No. C 08-0904 RS, 2008 WL 4661479, at *13 (N.D. Cal. Oct. 20, 2008), MKR filed suit against the video game maker Electronic Arts ("EA") claiming that EA's video game, titled "Dead Rising," infringed their mark, "George A. Romero's Dawn of the Dead." The court dismissed the Lanham Act claim, granting a 12(b)(6) motion, and explained that as a matter of law "MKR cannot demonstrate that 'dead,' standing alone, identifies either the movie or the video game as a whole. Indeed, that common word is contained in countless movies and game products."[7] _Id._ at *13. Here, as there, Plaintiffs' allegations are premised upon the use of a common word and do not present a viable theory of relief.

---

[7] _Cf. Rebelution, LLC v. Perez_, 732 F. Supp. 2d 883 (N.D. Cal. 2010) (where plaintiff and defendants both used the made-up word "rebelution"); _Masters Software, Inc. v. Discovery Communs., Inc._, 725 F. Supp. 2d 1294 (W.D. Wash. 2010), (where plaintiff and defendant both used the distinctive phrase "Cake Boss"). In citing these cases, Plaintiffs conspicuously fail to note the critical distinctions between them and the present case. First, both "rebelution" and "Cake Boss" were coined terms; neither was a term of common parlance like "50/50." Thus, these terms existed _only_ as trademarks. Second, the defendant in

To support their distorted interpretation of the law, Plaintiffs offer an incorrect description of *Roxbury Entm't v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170, 1173 (C.D. Cal. 2009). In that case the owner of the trademark in the television series "Route 66" filed suit against the entities which had made a pornographic film with that same title. Trying to distinguish *Roxbury*, Plaintiffs erroneously argue that the court found that the defendants' film and its title were used to comment upon the plaintiff's television series. A review of the opinion, however, reveals that both the television series and the film were employing the setting of the iconic interstate. Like the title "50/50," the use of "Route 66" by the defendants had nothing to do with the plaintiff's mark, and the court held that there could be no Lanham Act claim as a matter of law.

Similarly, in *Woodard*, the Court dismissed the plaintiffs' Lanham Act claims pursuant to Rule 12(b)(6) applying *Rogers* not because the album's title "Ripples and Waves" was a commentary upon the plaintiffs' band, but because the two had nothing to do with one another. That is precisely what the Court should do here.

**E.     Plaintiffs' State Law Claims Should Also Be Dismissed**

Plaintiffs purport to allege state law claims under the Illinois Uniform Deceptive Trade Practices Act, the Illinois Common Law Unfair Competition Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. "Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004) citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983). "Illinois courts look to federal case law and apply the same analysis to state infringement claims." *Id.*

---

*Masters Software* was using "Cake Boss" on a television *series*, and therefore in a source-denoting (i.e., "trademark") use, while the plaintiff had coined the term for use as its *own* trademark.

citing *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp 567, 579 (N.D. Ill. 1994) (dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act). Lanham Act principles also apply to Plaintiffs' purported common law unjust enrichment and unfair competition claims, as those claims too are premised on alleged trademark infringement. *See e.g., Gimix*, 699 F.2d at 908 (affirming summary judgment dismissing Lanham Act claims and, *inter alia*, Illinois common law false advertising, unfair competition, deceptive practices, dilution and unjust enrichment claims because state law claims all "depend upon the allegations of trademark infringement."). As explained above, the First Amendment precludes Plaintiffs' implausible and non-cognizable claims of unfair competition, and, accordingly, the Court should dismiss the complaint in its entirety. *See e.g., E.S.S. Entm't 2000 v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008); *Roxbury*, 669 F. Supp. 2d at 1173; *Mattel, Inc. v. MCA Records. Inc.*, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002).

## CONCLUSION

Contrary to Plaintiffs' dramatic urging that "no trademark [would be] safe" if their claims are dismissed, it is the constitutionally-protected freedom of artistic expression – not Plaintiffs' or anyone else's trademark – that would be threatened, and chilled, if Plaintiffs' frivolous claims are allowed to proceed. The case law clearly indicates that it is the rare case where the title of an expressive work would *not* be protected. Here, where Plaintiffs' registered trademark "Phifty-50" is not genuinely even an issue, and their alleged "common law trademark" – "50/50" – is nothing more than a common term which Plaintiffs have no right to monopolize, this is most certainly *not* that rare case. Indeed, under the First Amendment jurisprudence regarding titles of expressive works, Plaintiffs' claims are beyond the pale and are neither cognizable under

existing law nor could a good faith argument be made that would make them viable under any reasonable modification thereof, which is why Defendants' should be awarded their attorneys' fees and costs.

For all the reasons stated above, the Complaint should be dismissed for failure to state a claim, and Defendants should be awarded their attorneys' fees.

Dated this 5th day of June, 2012

By: /s/ Tom J. Ferber
    Tom J. Ferber
    Ross M. Bagley
    PRYOR CASHMAN LLP
    7 Times Square
    New York, New York 10036
    (212) 421-4100

    Joseph P. Bonavita
    GOULD & RATNER LLP
    222 North LaSalle Street
    Suite 800
    Chicago, Illinois 60601
    (312) 236-3003

    *Attorneys for Defendants*

14

## CERTIFICATE OF SERVICE

I, Joseph P. Bonavita, an attorney, hereby certify that I electronically filed the foregoing Defendants Summit Entertainment LLC's, Mandate Pictures, LLC's, and Lions Gate Entertainment, Inc.'s Reply Brief in Further Support of Their Motion To Dismiss Plaintiffs' Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record electronically, on June 5, 2012.

Ronald A DiCerbo
McAndrews, Held & Malloy, P.C.
Northwestern Atrium Center
500 West Madison Street
Suite 3400
Chicago, IL 60661
rdicerbo@mhmlaw.com

/s/   Joseph P. Bonavita