# SUPPLEMENTAL APPENDIX

## (Additional Unpublished
Cases Cited on Reply)

Westlaw.

Slip Copy, 2012 WL 1392996 (C.A.7 (Ill.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 1392996 (C.A.7 (Ill.)))**

Only the Westlaw citation is currently available. This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Seventh Circuit Rule 32.1. (Find CTA7 Rule 32.1)

United States Court of Appeals,
Seventh Circuit.
ANAGO FRANCHISING, INCORPORATED, Plaintiff–Appellant,
v.
IMTN, INC., an Illinois Corporation, et al., Defendants–Appellees.

No. 11–2639.
Argued: March 29, 2012.
Decided: April 23, 2012.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 11 C 585; John Darrah, Judge.
Joseph D. Garrity, Attorney, Garrity–Weiss, P.A., Deerfield Beach, FL, for Plaintiff–Appellant.

Cary S. Fleischer, Attorney, Chuhak & Tecson, Chicago, IL, for Defendants–Appellees.

Before MICHAEL S. KANNE, Circuit Judge, ILANA DIAMOND ROVNER, Circuit Judge and ANN CLAIRE WILLIAMS, Circuit Judge.

**ORDER**

*1 Anago Franchising ("Anago") initiated an action in federal court alleging trademark infringement under the federal Lanham Act, breach of contract, and a right to injunctive relief against IMTN, Inc., Myron L. Schuchman, and Tim Conn. The district court granted the motion to dismiss, holding that Anago had failed to state a claim on the trademark infringement claim and declining to exercise supplemental jurisdiction over the remaining claims. Anago now appeals that dismissal.

The focus of the parties on appeal is a narrow one and therefore we limit our factual discussion to those facts relevant to that analysis. Anago is a franchisor of commercial cleaning subfranchises to various individuals and businesses. Anago gave IMTN, an Illinois corporation, the exclusive right to use Anago's franchise system in the Chicago areas through a Subfranchisor Rights Agreement ("SRA") entered in or about January 25, 2001. "Anago" is a registered mark with the United States Patent and Trademark Office. Pursuant to the SRA, IMTN had the right to enter into agreements with unit franchisees and the right to enter into agreements to clean commercial accounts in the name of Anago, and IMTN was required to use software specifically developed by Anago. Cleantelligent is a software company which provides special software for commercial cleaning companies, and is in direct competition with Anago and its software products. Accordingly, Anago was disturbed when it discovered a letter on Cleantelligent's website written on Anago stationery indicating that Anago Chicago was a customer that used the Cleantelligent software and praising both the software and Cleantelligent's personal attention and customer service.

As the January 25, 2011 date neared for the renewal of the subfranchise, the parties engaged in negotiations for a renewal of the agreement, which ultimately proved fruitless. On January 10, 2011, Anago wrote to defendants' counsel notifying them that Anago was terminating the SRA. The defendants responded with a letter of January 14, 2011, alleging that the termination was improper but expressing a willingness to allow the agreement to expire by its own terms on January 25, 2011. On January 15, 2011, Conn sent a letter to Glenview Animal Hospital, an IMTN client, and that letter forms the crux of Anago's trademark infringement claim. The letter notified Glenview Animal Hospital of a "big change" in the company, stating:

[A]fter 10 years, our franchise relationship with Anago will expire on January 25, 2011. We have decided to explore other options that would best suit our clients and our franchises.

At midnight on January 25, 2011, we will close

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1392996 (C.A.7 (Ill.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 1392996 (C.A.7 (Ill.)))

operations as "Anago Chicago." We have made arrangements with another company, Image One Facility Solutions, to take over the servicing of your account, starting at 12:01 a.m. on January 25, 2011. The transition from Anago Chicago to Image One Facility Solutions will be seamless. Image One will take over all our office staff and all of our cleaning crews (unless they choose NOT to be a part of Image One.) You can reach Image One at the same address and telephone number.

**\*2** The only difference you should see is the name on the invoice sent to you. .... You will receive a letter from Image One Facility Solutions introducing itself and giving you information regarding where future payments should be sent.

Anago argues that the January 15 letter to Glenview Animal Hospital—and presumably other clients as well—constituted trademark infringement in violation of the Lanham Act. All parties agree that in order to succeed on a claim for trademark infringement under the Lanham Act, the plaintiff must establish a likelihood of consumer confusion.

The only allegation Anago makes of consumer confusion in the amended complaint is as follows:

The continued unlawful use by Defendants of the Anago mark, for a company with identical services in the identical geographic area as those offered by Anago, has or will inevitably cause confusion and deception of the trade and the public and will lead the public erroneously to believe that Cleantelligent's or IOFS [Image One] services are either sponsored by Anago or are offered with the consent and authority of Anago.

The district court noted that a plaintiff pursuing a Lanham Act claim must demonstrate that (1) its mark is protectable and (2) the defendants' use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir.2001); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 465, 461 (7th Cir.2000). The court concluded that Anago had failed to allege facts that plausibly suggest that the defendants used Anago's service mark in a manner likely to confuse consumers as to the source of the services.

We review the granting of a motion to dismiss de

novo. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir.2010). To survive a motion to dismiss, the complaint must contain sufficient factual allegations which, accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 934–35 (7th Cir.2012). Thus, a plaintiff "to survive dismissal 'must plead some facts that suggest a right to relief that is beyond the "speculative level." ' *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir.2009). To meet this plausibility standard, the complaint must supply enough facts to establish a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Indep. Trust Corp.*, 665 F.3d at 935. Moreover, a plaintiff can plead itself out of court by pleading facts that show it has no legal claim. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir.2011).

Anago argues that the district court erred in requiring Anago to plead the element "continued use" in order to state a Lanham Act claim. That claim is disingenuous. The district court discussed whether there were facts indicating continued use of the mark because Anago's amended complaint alleged that the defendants' continued use of the mark would cause consumer confusion—in other words, the court merely focused on the allegations of Anago's complaint, as is proper for a motion to dismiss. The complaint alleged that continued use of the mark and the letters to Cleantelligent and to Glenview Animal Hospital would lead the public to erroneously believe that Cleantelligent or Image One services are either sponsored by Anago or are offered with the consent and authority of Anago. The district court thus addressed the claim as Anago presented it, and did not require the establishment of any additional elements.

**\*3** Anago argues on appeal that the defendants—with the letters to Cleantelligent and the Glenview Animal Hospital—marketed Image One as a successor to the Anago entity and created the impression that it would be providing a continuation of Anago's system and services. This is a case in which there is no reasonable expectation that discovery will reveal evidence supporting Anago's allegations. In fact, Anago has pled facts that show it has no legal claim.

The letter to Cleantelligent is by its very terms the letter of a customer to a business whose product the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1392996 (C.A.7 (Ill.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 1392996 (C.A.7 (Ill.)))**

customer has used. There is absolutely nothing in that letter to indicate that Cleantelligent is affiliated with Anago. There are no other allegations pertaining to Cleantelligent in the complaint, and Anago does not attempt on appeal to explain why that customer satisfaction letter on Cleantelligent's website should constitute a trademark infringement. Instead, Anago appears to consider the Cleantelligent letter as a breach of the SRA contract, which it may well be but that is an issue over which the district court declined to exercise supplemental jurisdiction.

The main argument pursued by Anago is that the January letter to Glenview Animal Hospital, and presumably other clients as well, caused client confusion. The language of the letter belies any such claim. The letter made clear that the franchise relationship with Anago was expiring, that at midnight on January 25th it would close operations as Anago of Chicago, that it had made arrangements with another company to take over servicing the account, and that it hoped the client would be confident in the services provided by the new company. Far from creating confusion as to whether the new company was a part of Anago or sponsored by Anago, the letter makes clear to the client that the new company is a distinct entity with no relationship to Anago, and that Anago of Chicago as a franchise of Anago would close operations. Moreover, the letter negates any contention of continuing use of the mark, because it explicitly disavows any ongoing connection with Anago and declares that further correspondence will be on behalf of a new, independent company. The letter prevents rather than causes consumer confusion, and therefore there are no factual allegations indicating a plausible claim. Anago may have a separate claim for breach of the SRA, but the factual allegations in the complaint doom the claim of trademark infringement. The district court properly granted the motion to dismiss, and acted within its discretion in declining to exercise supplemental jurisdiction. We have considered appellees request for sanctions, but have determined that sanctions are not warranted and decline to impose them.

The decision of the district court is AFFIRMED.

C.A.7 (Ill.),2012.
Anago Franchising, Inc. v. IMTN, Inc.
Slip Copy, 2012 WL 1392996 (C.A.7 (Ill.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 5064762 (N.D.Ill.)
**(Cite as: 2009 WL 5064762 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
**GMP TECHNOLOGIES, LLC, Plaintiff,**
v.
**ZICAM, LLC and Matrixx Initiatives, Inc., Defendant.**

No. 08 C 7077.
Dec. 9, 2009.

West KeySummary**Declaratory Judgment 118A**
☙⟞⟝300

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak299 Proper Parties
           118Ak300 k. Subjects of relief in general. Most Cited Cases
    Technology corporation failed to state a declaratory claim against parent corporation. Technology corporation sought a declaration of invalidity and noninfringement of two patents. However, the parent corporation owned no interest in the patents at issue and would not have standing to bring a patent infringement suit against technology corporation. It was therefore not a proper party to technology corporation's declaratory action. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Keith V. Rockey, Kathleen Ann Lyons, Rockey, Depke & Lyons, LLC, Chicago, IL, for Plaintiff.

David Scott Becker, David L. Ter Molen, Jacob D. Koering, Jennifer Lynn Fitzgerald, Jill Christine Anderson, Leland W. Hutchinson, Jr., Michael J. Kelly, Freeborn & Peters, Chicago, IL, for Defendant.

### MEMORANDUM OPINION & ORDER
JOAN B. GOTTSCHALL, District Judge.
   **\*1** Plaintiff GMP Technologies, LLC ("GMP") brings this action against defendants Zicam, LLC ("Zicam") and Zicam's parent corporation, Matrixx

Initiatives, Inc. ("Matrixx") (collectively, "defendants"). In its Amended Complaint, GMP seeks a declaration of invalidity and noninfringement of two patents in Count I and damages under various state law tort doctrines in Counts II through IV. Presently before the court is defendants' motion to dismiss Count I as to Matrixx, which defendants assert has no interest in the patents at issue, and Counts II through IV as to all defendants on the grounds of federal preemption.[FN1] The court grants defendants' motion to dismiss with regard to GMP's allegations against Matrixx in Count I and denies the motion with regard to GMP's state-law allegations against defendants.

   FN1. Defendants filed a motion to dismiss GMP's original complaint, but GMP sought (and the court granted) leave to amend that complaint. GMP then filed its Amended Complaint, and defendants filed the motion presently before the court. Defendants' motion to dismiss GMP's original complaint is therefore denied as moot.

### I. LEGAL STANDARD
   Rule 12(b)(6) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion the court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir.2007) (internal citation omitted). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting Fed.R.Civ.P. 8(a)(2)). However, the allegations must provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 5064762 (N.D.Ill.)
(Cite as: 2009 WL 5064762 (N.D.Ill.))

to "state a claim to relief that is plausible on its face[.]" *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).

## II. ANALYSIS

Before turning to the merits of the motion to dismiss, the court addresses two preliminary questions.

### A. Matrixx's letters to Walgreen's

GMP's claims against Matrixx and its state-law claims against Zicam arise from two letters: the first, dated October 24, 2008, is from Matrixx's internal counsel to Walgreen Co. ("Walgreen's"), which is not a party to this case; and the second, dated October 31, 2008 is from outside counsel for Matrixx and Zicam, also to Walgreen's. In its Amended Complaint, GMP refers to these letters without attaching them. *See* Compl. ¶¶ 11, 13. Generally, matters outside the pleading are not considered in the context of a Rule 12(b)(6) motion. *See* Fed.R.Civ.P. 12(b)(6); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 430 (7th Cir.1993). However, the court construes documents as part of the pleadings if the defendants attach the documents to their Rule 12(b)(6) motion to dismiss and if those documents are referenced in plaintiff's complaint and are central to its claim. *See Venture Assocs. Corp.*, 987 F.2d at 430. The October 24 and October 31 letters satisfy each of these requirements, and the court considers them as part of GMP's Amended Complaint.

### B. Matrixx's interest in the subject patents

*2 The question of Matrixx's interest in the subject patents is relevant to both parts of the motion: Matrixx asserts that it has no interest in the patents, and therefore is not a proper defendant to GMP's declaratory action, while the parties debate the effect of Matrixx's interest in the patents on questions of federal preemption. In its Amended Complaint, GMP never alleges that Matrixx owns the patents at issue. However, Matrixx muddied the issue by attaching the October 24 and October 31 letters to its motion to dismiss. In the October 24 letter, internal counsel for Matrixx wrote that "Matrixx Initiatives, Inc. (Matrixx), through its subsidiary Zicam, LLC, owns several patents," including the patents at issue here. *See* Mem. Ex. B; *see also id.* Ex. C (stating that "Zicam,"

defined as "Matrixx Initiatives, Inc. and its subsidiary Zicam LLC," owns the patents at issue). A reasonable inference from the imprecise language in these letters might be that Matrixx owns at least some interest in the patents at issue. But a party can plead itself out of court, *see Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir.2004), and GMP has done so here, repeatedly alleging that Matrixx has no interest in the subject patents. *See* Compl. ¶ 18.

### C. Declaratory Action

GMP's declaratory action against Matrixx must be dismissed. A parent corporation generally has no standing to bring an infringement suit for a patent that its subsidiary owns. *See DePuy, Inc. v. Zimmer Holdings, Inc.*, 384 F.Supp.2d 1237, 1238 (N.D.Ill.2005); *see also GPS Indus., Inc. v. Altex Corp.*, No. 07-CV-0831-K, 2009 WL 2337921, at *2 (N.D.Tex. July 27, 2009). Declaratory noninfringement actions are mirror images of infringement suits, *see VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed.Cir.1990), and so a party that lacks standing to bring an infringement suit is not the proper defendant to a declaratory noninfringement action. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed.Cir.1998) (summarizing nonprecedential opinion). Matrixx, owning no interest in the patents at issue here, would have no standing to bring a patent infringement suit against GMP, and so is not the proper party defendant to GMP's declaratory action.

### D. State Law Claims

Matrixx and Zicam also assert that GMP's state-law claims against them must be dismissed because those claims are preempted by federal law. The Court of Appeals for the Federal Circuit recently reiterated the standard for federal preemption in cases such as this:

> State tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are "preempted" by federal patent laws, unless the claimant can show that the patent holder acted in "bad faith" in the publication or enforcement of its patent.
>
> ...
>
> This "bad faith" standard has objective and subjective components. The objective component requires

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 5064762 (N.D.Ill.)
(Cite as: 2009 WL 5064762 (N.D.Ill.))

a showing that the infringement allegations are "objectively baseless." The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith.

*3 *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1369-70 (Fed.Cir.2008) (citations omitted). "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors SDN. BHD. v. Osram GmbH*, 524 F.3d 1254, 1260 (Fed.Cir.2008) (internal quotation marks and citations omitted).[FN2]

> FN2. GMP argues that Matrixx, because it is not the patent-holder, is not protected by federal preemption, and so GMP need not plead that Matrixx acted in bad faith. The court finds this argument unpersuasive, particularly in light of case law applying preemption to claims against non-patent-holders such as Matrixx. *See, e.g., Fisher Tool Co. v. Gillet Outillage*, 530 F.3d 1063, 1038 (9th Cir.2008).

In evaluating whether GMP has adequately pled "bad faith," the court must first determine what pleading standard applies. Defendants urge without citation that Federal Rule of Civil Procedure 9(b)'s requirement that allegations of fraud or mistake be made with particularity applies equally to allegations of "bad faith." Mem. 10; *see also* Fed.R.Civ.P. 9(b). No federal court has ruled on whether the "bad faith" exception to federal preemption must be pled with particularity, and the Seventh Circuit has not addressed the question of the applicability of Rule 9(b) to allegations of bad faith. However, at least one appellate court has addressed the general question and found that allegations of bad faith are distinct from those of fraud, and so do not require pleading with particularity. *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir.1991). Moreover, "bad faith" is no more similar to "fraud" than it is to "[m]alice, intent, [and] knowledge," which Rule 9(b) allows litigants to plead generally. *See* Fed.R.Civ.P. 9(b). The court finds that GMP's allegations of "bad faith" are subject to the general pleading requirement of Federal Rule of Civil Procedure 8(a).

Turning to the Amended Complaint, GMP repeatedly alleges that Zicam and Matrixx took certain

actions "deliberately and intentionally," "with intent" and "in bad faith." *See, e.g.,* Compl. ¶¶ 18, 24. These legal conclusions are not entitled to any weight, and cannot salvage GMP's state-law claims from preemption. *Iqbal*, 129 S.Ct. at 1940. Likewise, GMP's allegations that Zicam and Matrixx falsely warned of patent infringement do not by themselves support a reasonable inference of bad faith, *see* Compl. ¶ 18(e), for if an aggrieved party had only to allege that an infringement warning was erroneous to avoid federal preemption, the bad-faith hurdle would be meaningless. *See Twombly*, 550 U.S. at 566. GMP also alleges that Matrixx and Zicam represented that Matrixx owned the patents at issue, had filed for additional patents, and had the right to license them to others, but "knew full well" that Matrixx did not own the patents. *See id.* ¶ 18(a), (c) & (d). But, the letters that form the basis for this claim support at most an inference of imprecise language, and not an inference that the defendants' allegations of infringement were "objectively baseless."

GMP's remaining specific allegations support a claim for bad faith. GMP asserts that defendants warned Walgreen's that the patents "provided 'very broad protection,' " and knew that its representation to Walgreen's was false, or made such representations without regard for their truth. *See id.* ¶ 18(b). While this allegation alone would test the limits of Rule 8(a), GMP also alleges that the products it sold to Walgreen's were of a far different viscosity than the products covered by the patents. *See id.* ¶¶ 7-9. Taking all reasonable inferences in GMP's favor, its allegations, if proven true, could show that defendants' representations were "objectively baseless," given the disparity between the patents and the products sold by GMP, and subjectively in bad faith, given defendants' knowledge or recklessness with respect to the falsity of their representations. The court therefore denies defendants' motion to dismiss with respect to GMP's state-law claims.

### III. CONCLUSION

*4 The court grants defendants' motion to dismiss regarding Count I of the Amended Complaint against Matrixx and denies the motion regarding Counts II through IV.

N.D.Ill.,2009.
GMP Technologies, LLC v. Zicam, LLC
Not Reported in F.Supp.2d, 2009 WL 5064762

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 5064762 (N.D.Ill.)
**(Cite as: 2009 WL 5064762 (N.D.Ill.))**

(N.D.Ill.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
**(Cite as: 2002 WL 31426651 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
**PUBLICATIONS INTERNATIONAL, LTD.,** an
Illinois corporation, Plaintiff,
v.
**LEAPFROG ENTERPRISES,** INC., a Delaware
corporation, Defendant.

No. 01 C 3876.
Oct. 29, 2002.

Corporation that produced, sold, and distributed children's books brought Lanham Act suit against competitor and asserted related state law claims of unfair competition, deceptive trade practices, and false advertising, and seeking injunctive and monetary relief. Alleged infringer moved to dismiss. The District Court, Gettleman, J., held that: (1) corporation failed to state claim against competitor for false procurement of trademark registration; (2) subsequent assignment of trademark registration would not result in liability against competitor for allegedly false procurement of trademark registration; (3) claim under Illinois Consumer Fraud Act did not have heightened pleading requirements; and (4) corporation failed to state common law unfair competition claims.

Motion granted in part and denied in part.

West Headnotes

**[1] Trademarks 382T ⟶1382**

382T Trademarks
  382TVII Registration
    382TVII(D) Misuse of Federal Registration
      382Tk1381 False or Fraudulent Registration
in General
        382Tk1382 k. In General. Most Cited
Cases
    (Formerly 382k264)

Corporation that produced, sold, and distributed children's books failed to state claim against compet-

itor for false procurement of trademark registration, absent allegations that competitor itself made any fraudulent misrepresentations to Patent and Trademark Office (PTO) in connection with maintenance of the registration; alleged fraudulent statements were made five years before competitor existed as an entity. Lanham Trade-Mark Act, § 38, 15 U.S.C.A. § 1120.

**[2] Trademarks 382T ⟶1382**

382T Trademarks
  382TVII Registration
    382TVII(D) Misuse of Federal Registration
      382Tk1381 False or Fraudulent Registration
in General
        382Tk1382 k. In General. Most Cited
Cases
    (Formerly 382k264)

Assignment of trademark registration to competitor of corporation that produced, sold, and distributed children's books would not result in liability against competitor for allegedly false procurement of trademark registration; the "procurement" of a fraudulent registration would trigger damages, not assignment. Lanham Trade-Mark Act, § 38, 15 U.S.C.A. § 1120.

**[3] Federal Civil Procedure 170A ⟶636**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and Particularity
        170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
    (Formerly 382k264)

Conduct which confused or created misunderstanding as to source, sponsorship, approval, or certification of goods or which created a likelihood of such confusion or misunderstanding did not constitute "fraud" within meaning of procedural rule requiring heightened pleading for fraud claims, and thus claim under Illinois Consumer Fraud Act, which incorporated Illinois Uniform Deceptive Trade Practices Act, by corporation which produced, sold, and distributed

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
**(Cite as: 2002 WL 31426651 (N.D.Ill.))**

children's books, did not have heightened pleading requirements, but rather was subject to federal notice pleading. S.H.A. 815 ILCS 505/2; S.H.A. 815 ILCS 510/2; Fed.Rules Civ.Proc.Rules 8(a), 9(b), 28 U.S.C.A.

**[4] Antitrust and Trade Regulation 29T** ☜76

29T Antitrust and Trade Regulation
   29TII Unfair Competition
      29TII(B) Actions and Proceedings
         29Tk74 Pleading
            29Tk76 k. Particular Cases. Most Cited Cases
      (Formerly 382k864 Trade Regulation)

Corporation which produced, sold, and distributed children's books failed to state common law unfair competition claims against competitor, absent designation of the states' common laws at issue.

*MEMORANDUM OPINION AND ORDER*
GETTLEMAN, J.

*1 Publications International, Ltd. filed a seven-count amended complaint seeking injunctive and monetary relief against LeapFrog Enterprises, Inc., alleging numerous violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as state law claims of unfair competition, deceptive trade practices, and false advertising.[FN1] Defendant has filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss three of the seven counts of the amended complaint for failure to state claims. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

> FN1. Defendant has also filed counterclaims for trademark infringement and unfair competition, which are unrelated to the instant motion.

*BACKGROUND* [FN2]

> FN2. In distilling the factual background of the instant dispute, the court is not limited merely to the allegations in the complaint and exhibits attached thereto. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are both central to the plaintiff's claim and referenced in the complaint. *Venture Associates*

*Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

Publications International, Ltd. ("PIL") is an Illinois corporation, with its headquarters and principal place of business located in Lincolnwood, Illinois. PIL produces, distributes and sells children's books throughout the United States on topics ranging from baby's first vocabulary to favorite bible stories. Since 1990, PIL has used a mark consisting of the words "LEAP FROG" in white block letters, beneath which is the depiction of a green frog displayed against a darker green rectangle, along with the "™" symbol. This designation has been used on a number of PIL's book sets, including collections of Christmas stories, Beatrix Potter animal stories, fairy tales, and nature stories, as well as CD-Roms, plush toys, and flashcards. These products have been sold in a variety of retail venues, including Target, Wal-Mart, K-Mart, grocery stores and bookstores.

LeapFrog Enterprises, Inc. ("LeapFrog") is a Delaware corporation, with its headquarters and principal place of business located in Emeryville, California. LeapFrog's predecessor, LeapFrog RBT, LLC ("LeapFrog RBT") was founded in 1995. LeapFrog sells educational toys for infants and toddlers, including interactive children's books.

In 1984, Willowisp Press, Inc. ("Willowisp I") registered a trademark for children's books consisting of the words LEAPFROG SERIES LIMITED VOCABULARY, arranged in a circle with the depiction of a sitting cross-eyed frog, which was assigned U.S. Reg. No. 1,306,993 (the " '993 registration") by the United States Patent and Trademark Office (PTO). Plaintiff alleges that only two titles bearing this logo were ever distributed or offered for sale by Willowisp I or its successors-in-interest, and the entire saleable inventory of these books was disposed of or sold by July 1988.

On July 29, 1988, Willowisp I merged into School Book Fairs, Inc. ("School Book Fairs"), a Florida corporation; however, this merger was not recorded in the PTO. As a result, title to the '993 registration remained in the name of Willowisp I. On August 2, 1988, a new corporation bearing the name Willowisp Press, Inc. was incorporated in Florida ("Willowisp II"). According to public records attached to plaintiff's complaint, Willowisp II and Wil-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
**(Cite as: 2002 WL 31426651 (N.D.Ill.))**

lowisp I had identical addresses, as well as the same board of directors and officers.

In August 1990, Willowisp II filed a combined declaration pursuant to Sections 8 and 15 of the Lanham Act, affirming that the '993 registration had been in continuous use over the preceding five years and was still in use in commerce on children's books, thus preserving the registration of the trademark on the principal register of the PTO. On April 24, 1992, Willowisp II merged into SFB Services, Inc. On July 20, 1994, Willowisp II assigned the '993 registration to School Book Fairs.

*2 In 1995, LeapFrog RBT adopted the word LEAPFROG and a designation consisting of a depiction of a green frog on a block as a trademark for a toy phonics bus. In 1997, LeapFrog RBT applied to register this design mark as a trademark for children's educational toys. The registration was blocked, however, by the '993 registration. Plaintiff alleges that after ascertaining that the '993 registration was not being used in commerce in 1997, LeapFrog RBT sought to purchase the mark and related registration to enable the registration of its own design mark. This purchase was allegedly consummated in a quitclaim assignment on July 18, 1996, in which LeapFrog RBT paid School Book Fairs a "nuisance sum" for an assignment in-gross of bare title to the '993 registration. Plaintiff alleges that neither goodwill nor related business assets was conveyed to LeapFrog RBT with the '993 registration. According to the assignment document that School Book Fairs recorded with the PTO, however, goodwill was in fact conveyed along with the trademark .[FN3]

> FN3. The court notes that the notice of assignment submitted to the PTO must be distinguished from the actual deed conveying the trademark to LeapFrog RBT.

On September 23, 1997, LeapFrog RBT assigned its rights in this trademark to defendant, allegedly without goodwill. Defendant subsequently registered several related marks for electronic educational toys, educational software, school bags and children's books. Moreover, defendant also allegedly adopted and used a number of "LEAPFROG" or "LEAP" formative marks, such as LEAPPAD and LEAPFROG LEARNING POND, in conjunction with the registered trademarks. Plaintiff alleges that defendant has

undertaken an aggressive advertising campaign involving these marks, which has caused reverse confusion and misled the trade and consumers into believing that PIL's LEAP FROG books and products "emanated from, or were somehow approved or sponsored by defendant."

Accordingly, in its amended complaint, plaintiff seeks injunctive and monetary relief on the basis of the following seven counts: (I) use of false marks which are likely to cause confusion in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (II) fraudulent maintenance of a federal registration in violation of §§ 14 and 38 of the Lanham Act, 15 U.S.C. §§ 1064(3) and 1120; (III) abandonment of the '993 registration, within the meaning of § 45 of the Lanham Act, 15 U.S.C. § 1127; (IV) false advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (V) deceptive trade practices in violation of the Illinois Consumer Fraud Deceptive Business Practices Act, 815 ILCS 505/2(8); (VI) false advertising and unfair business practices under §§ 17200 et seq. of the California Business and Professional Code; and (VII) "trade name and trademark infringement and acts of unfair competition in violation of the common law of the states of Illinois, California, and of the other states of the Union." Pursuant to Fed.R.Civ.P. 12(b)(6), defendant has moved to dismiss Counts II, V, and VII for failure to state claims. For the reasons stated below, defendant's motion is granted with respect to Counts II and VII and denied with respect to Count V.

*ANALYSIS*

*3 The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). In ruling on the motion, the court considers whether relief is possible under any facts that could be established consistent with the allegations. Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir.1992). To this end, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiffs. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir.1996). With these standards in mind, the court analyzes Counts II, V, and VII.

*Count II-Fraud in Maintaining a Trademark Registration*
    Section 38 of the Lanham Act, 15 U.S.C. § 1120,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
(Cite as: 2002 WL 31426651 (N.D.Ill.))

provides:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Section 14(3), 15 U.S.C. § 1164(3), further provides that, at any time, "any person who believes that he is or will be damaged," may file a petition to cancel a fraudulently registered mark.

At the outset, the court notes that allegations of fraudulent procurement must be pled with particularity, pursuant to Fed.R.Civ.P. 9(b). *Oreck Corp. v. Thomson Consumer Elec., Inc.,* 796 F.Supp. 1152, 1159 (S.D.Ind.1992). Hence, a general allegation of fraud without an accompanying recitation of details is insufficient. *Id.*

[1] In Count II of its amended complaint, plaintiff seeks cancellation of the '993 registration under § 14(3), as well as damages under § 38. Plaintiff alleges that the false Section 8 affidavit filed by Willowisp II constituted fraud, and that defendant "knew or should have known by a cursory examination of the Florida corporate records that the '993 registration was invalid and of no force and effect, and ... knew its title to [the '993 registration] rested on a series of invalid assignments-in-gross in which no goodwill or related assets were conveyed with the trademark ."

In response, defendant asserts three distinct grounds for dismissing plaintiff's claim for damages under § 38. First, defendant maintains that because plaintiff has not alleged that LeapFrog "procured" the '993 registration, or made any false statements to the PTO, LeapFrog cannot be liable in damages to plaintiff under § 38 of the Lanham Act. Defendant also asserts that Count II is barred by the applicable statute of limitations. Last, defendant contends that plaintiff has not alleged its injury with sufficient particularity, as required under Fed.R.Civ.P. 9(b). Because the court concludes that the first ground for dismissal of Count II is dispositive, the court need not address the potential merits of defendant's other arguments.[FN4]

> FN4. The court notes, however, that statute of limitations is an affirmative defense,

which plaintiff is not required to plead around in a complaint. *See Leavell v. Kieffer,* 189 F.3d 492, 494 (7th Cir.1999).

*4 Plaintiff maintains that *Elec. Info. Publ'ns, Inc. v. C-M Periodicals,* 163 U.S.P.Q. 624 (N.D.Ill.1969), undermines defendant's argument that its alleged awareness of Willowisp II's fraudulent misrepresentations does not result in liability under § 38. In *Elec. Info. Publ'ns,* the court imposed § 38 liability on EIP, which had purchased a mark that was obtained through fraudulent representations by another company, Ahrens. In finding liability, the court noted that, at the time of the purchase, EIP knew that Ahrens had not used the mark for several years. *Id.* at 630. Moreover, after the purchase, EIP "represented, and continued to represent, to the Patent Office ... that the two former Ahrens registrations were validly continued," and filed false affidavits with the PTO to maintain its registrations. *Id.* at 631. The court therefore concluded that the federal registrations at issue were "procured and maintained by [EIP's] purposeful misrepresentation of the facts to the Patent Office concerning [EIP's] and [Ahrens'] transactions and use, and thus were falsely and fraudulently registered within the meaning of [§ 38]." *Id.* at 632.

Notwithstanding the arguable similarities between *Elec. Info. Publ'ns* and the instant dispute, and putting aside the appropriateness of awarding § 38 liability for misrepresentations made in connection with maintenance, rather than procurement, of a registration, the court concludes that plaintiff has not stated a claim against LeapFrog under § 38. In contrast to *Elec. Info. Publ'ns,* plaintiff in the instant case has not alleged that defendant itself made any fraudulent misrepresentations to the PTO in connection with the maintenance of the registration at issue.

The amended complaint merely states that the '993 registration was "fraudulently maintained by the filing of a false Section 8 Declaration ... by a declarant that was not the owner of said registration." This allegation conspicuously fails to identify defendant or its predecessor, LeapFrog RBT, as the party that allegedly made the misstatements. Indeed, plaintiff concedes elsewhere in the complaint that Willowisp II actually filed the allegedly fraudulent affidavits. Moreover, the fraudulent misstatements were submitted to the PTO in 1990, five years before LeapFrog RBT, defendant's predecessor, existed as an entity.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
(Cite as: 2002 WL 31426651 (N.D.Ill.))

Consequently, based on the allegations in the amended complaint, any insinuation that LeapFrog acted in concert with Willowisp II when it filed the allegedly fraudulent affidavits is baseless.

[2] Further, the subsequent assignment of the '993 registration to LeapFrog does not result in § 38 liability against LeapFrog. Plaintiff cites to *Marshak v. Treadwell,* 58 F.Supp.2d 551, 557 (D.N.J.1999), *aff'd* 240 F.3d 184 (3d Cir.2001), for the proposition that the assignee of a trademark stands in the shoes of his assignors and can have no greater trademark rights than they had. In *Marshak,* the district court cancelled the plaintiff's trademark after the jury determined that the plaintiff's assignors had invalidly procured a trademark that they subsequently assigned to the plaintiff. *Id.* at 561. The court notes, however, that the counterclaim at issue in *Marshak* was brought under § 14(3) for cancellation, and did not involve a § 38 claim for damages. Hence, the court in *Marshak* expressed no opinion on the appropriateness of levying damages against an assignee for the alleged fraud of his assignors.

*5 Thus, defendant's alleged knowledge of the misrepresentations at the time it purchased the trademark does not support a claim for § 38 liability. Plaintiff cites to *Merry Hull & Co. v. Hi-Line Co.,* 243 F.Supp. 45 (S.D.N.Y.1965), and *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973 (M.D.Tenn.1971), for the proposition that, to state a claim under § 38, plaintiff need only "allege that LeapFrog had knowledge of any false means or fraudulent or false representations made with respect to the registration at issue." Plaintiff's reliance on these cases is misplaced, however, because both *Merry Hull* and *Schwinn* involved allegations that the parties themselves, or their officers, made the misrepresentations in their applications for registration. *See, e.g., Schwinn,* 339 F.Supp. at 984 ("Before *Schwinn* can incur liability under [§ 38], Murray must present sufficient evidence to support a finding that *Schwinn* procured registration by a declaration or representation that is either incorrect or a willful attempt to mislead the Patent Office."). (Emphasis added.) As the plain text of the statute suggests, it is the "procurement" of the fraudulent registration that triggers damages under § 38.

Accordingly, the court concludes that, to the extent Count II purports to state a claim for damages

under § 38 of the Lanham Act, that claim must be dismissed. In so holding, the court notes that plaintiff's claim for cancellation under § 14(3) is not affected by this ruling.

*Count V-Illinois Deceptive Practices Act*

[3] In Count V, plaintiff incorporated the preceding paragraphs of the amended complaint, and asserted that "the aforesaid acts of Defendant, Leap-Frog, constitute deceptive trade practices and acts in the conduct of Defendant's business in violation of the Illinois Consumer Fraud Deceptive Practices Act, 815 ILCS 505/2(8)." In its motion to dismiss, defendant maintains that Count V fails to specify which of two Illinois statutes forms the basis of plaintiff's claim, and that the supporting allegations lack sufficient particularity. In response, plaintiff asserts that the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, has been incorporated into the Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/2. Plaintiff further asserts that it is "well-settled that the elements of a good § 43(a) Lanham Act claim overlap with the elements of a claim under the Illinois Uniform Deceptive Trade Practices Act, provided that conduct within Illinois is involved."

The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act") explicitly incorporates § 2 of the Uniform Deceptive Trade Practices Act by prohibiting "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... the use or employment of any practice described in § 2 of the 'Uniform Deceptive Trade Practices Act.' " 815 Ill. Comp. Stat. § 505/2. Section 2 of the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, provides that "A person engages in a deceptive trade practice when ... the person ... (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services ... (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

*6 Having established that the Illinois Consumer Fraud Act does in fact incorporate § 2 of the Uniform Deceptive Trade Practices Act, the next issue becomes the degree of specificity with which plaintiff must plead its claim. Defendant contends that plaintiff's claim is subject to the heightened pleading require-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
(Cite as: 2002 WL 31426651 (N.D.Ill.))

ments set forth in Fed.R.Civ.P. 9(b), described above. *See Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F.Supp. 176, 180 (N.D.Ill.1996).* The plain text of the Illinois Consumer Fraud Act belies defendant's contention, however.

On its face, in both its title and the substantive text of the statute, the Illinois Consumer Fraud Act covers several types of conduct in addition to fraud, including all practices that violate § 2 of the Illinois Deceptive Trade Practices Act. *See Mitsubishi Elec. Corp. v. IMS Technology, Inc., 1997 WL 630187, at *10 (N.D.Ill. Sept.30, 1997); Hoffman v. Szyszko, 1995 WL 519815, at *5 (N.D.Ill. Aug.30, 1995).* For example, as noted above, § 2 of the Illinois Deceptive Trade Practices Act provides relief for business activities that create "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," [FN5] as well as "any other conduct which similarly creates a likelihood of confusion or misunderstanding." Such activity, which apparently is relevant to the instant dispute, does not necessarily constitute fraud in a manner that would implicate Fed.R.Civ.P. 9(b). *See, e.g., Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc., 657 F.Supp. 1486, 1494 (N.D.Ill.1987).* Therefore, Count V is subject to federal notice pleading, which requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir.1999).*

FN5. This language is practically identical to the language in § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), asserted in Count I of the complaint, which provides relief for misrepresentations that are "likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Defendant has not asserted that plaintiff's Lanham Act claim is subject to the heightened pleading standards outlined in Fed.R.Civ.P. 9(b).

As noted above, in evaluating a motion to dismiss, the court must read the allegations in the complaint in a light most favorable to the plaintiff, and ask whether relief is possible under any facts that could be established consistent with the allegations. Although the court would prefer for plaintiff to specify which sub-

sections were allegedly violated by defendant, plaintiff's failure to do so is not grounds for dismissal under notice pleading. Indeed, the allegations in the complaint are sufficient to put defendant on notice with respect to what claims it must defend against in Count V, notwithstanding plaintiff's typographical errors. Accordingly, the court denies defendant's motion to dismiss Count V.[FN6]

FN6. In the event that plaintiff does file an amended complaint, the court encourages plaintiff to correct errors related to its citations to the Illinois Consumer Fraud Act and Illinois Uniform Deceptive Trade Practices Act.

*Count VII-Common Law Unfair Competition*
[4] In Count VII, plaintiff alleges "trade name and trademark infringement and acts of unfair competition in violation of the common law of the states of Illinois, California, and of the other states of the Union." In its motion to dismiss, defendant contends that plaintiff's incorporation of 91 paragraphs of the complaint fails to notify LeapFrog which paragraphs allegedly support the claim of unfair competition, and that plaintiff's reliance on the law of every state of the union "fails to provide LeapFrog 'fair notice' of exactly what alleged facts and laws it is supposed to defend against."

*7 While the court does not take issue with plaintiff's incorporation of the previous 91 paragraphs of its complaint, the court does conclude that plaintiff must specify which states' common laws are at issue. Indeed, the damages available for an unfair competition claim, as well as the specific elements thereof, may vary significantly from state to state. Hence, the court grants defendant's motion to dismiss Count VII without prejudice.

*CONCLUSION*
For the reasons stated herein, defendant's motion to dismiss for failure to state a claim is granted with respect to the damages claim in Count II, granted without prejudice with respect to Count VII, and denied with respect to Count V.

N.D.Ill.,2002.
Publications Intern., Ltd. v. Leapfrog Enterprises, Inc.
Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31426651 (N.D.Ill.)
**(Cite as: 2002 WL 31426651 (N.D.Ill.))**


END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.